UNITED STATES of America,
Plaintiff–Appellee,

v.

Letitia MAGINI, a/k/a Tish Anderson,
Defendant–Appellant.

No. 90–6146.

United States Court of Appeals,
Fourth Circuit.

Argued April 8, 1992.

Decided Aug. 14, 1992.

As Amended Sept. 3, 1992.

Marjorie M. McAteer, Student Counsel, Appellate Litigation Clinical Program, Georgetown University Law Center, Washington, D.C., argued (Steven H. Goldblatt, Director, Beth E. Cook, Supervising Atty., David M. Hernand, Student Counsel, on brief), for defendant-appellant.

Robert Jack Higdon, Jr., Asst. U.S. Atty., Charlotte, N.C., argued (Thomas J. Ashcraft, U.S. Atty., of counsel), for plaintiff-appellee.

Before HALL and SPROUSE, Circuit Judges, and KIDD, Senior United States District Judge for the Northern District of West Virginia, sitting by designation.

OPINION

SPROUSE, Circuit Judge:

Letitia Magini, in a habeas corpus claim filed under 28 U.S.C. § 2255, contends that her Sixth Amendment right to counsel was violated because the representation of her attorney, Keith Stroud, was tainted by a conflict of interest. The district court granted the government's summary judgment motion, and Magini appeals. We reverse and remand for an evidentiary hearing on the conflict of interest claim.

I

Magini was indicted in federal courts both in North Carolina and in California on a number of drug and tax charges. On October 24, 1983, Magini pleaded guilty in the district court for the Western District of North Carolina to one count of participating in a continuing criminal enterprise, 21 U.S.C. § 848, and one count of failing to file a federal income tax return, 26 U.S.C. § 7203. In February 1984, she entered a guilty plea on a continuing criminal enterprise count in the district court for the Eastern District of California. She was sentenced by the North Carolina district court to fifteen years of incarceration without parole. The California district court ultimately sentenced her to ten years, to run concurrently with the North Carolina federal sentence.

Magini was initially represented in California by David Beauvais and Susan Beauvais, husband and wife, and in North Carolina by Keith Stroud. Although David Beauvais was a court-appointed attorney, Susan Beauvais negotiated an agreement charging $210,000 in Magini's real and personal property for coordinating the defense of Magini and her son in California and North Carolina and for editing a book about Magini's life. Pursuant to that agreement, Beauvais obtained Magini's assets, including her jewelry.

Susan Beauvais arranged for Stroud to represent Magini in North Carolina for a fee of $25,000. As partial payment Stroud received from Susan Beauvais $2,200 in cash and an emerald of Magini's which had been appraised at $20,000. When the emerald turned out to be worth only $1,200, Susan Beauvais flew to North Carolina with some of Magini's jewelry to show Stroud that there were sufficient assets to cover his fee. According to Susan Beauvais, Stroud gave the jewelry to a jeweler for safekeeping and refused to return it to her.

Shortly thereafter, Magini dismissed Susan Beauvais and entered into a superseding fee agreement with Stroud under which Stroud was to represent her in North Carolina and to coordinate her California defense for the same $25,000 fee. David Beauvais continued as her court-appointed California counsel.

Stroud subsequently negotiated both plea agreements, although David Beauvais participated to an undetermined extent in both. Stroud arranged for United States Attorneys from California and North Carolina to meet with him and Magini in North Carolina in order to negotiate a plea. Magini contends that Stroud did this even though it was contrary to Magini's express intent to go to trial and without consulting either Magini or David Beauvais. Stroud informed Magini of the scheduled meeting on October 16, 1983, and Magini then asked David Beauvais to fly to North Carolina to attend the meeting. Magini signed the agreements on October 19, 1983. Although both agreements specified fifteen years' imprisonment, only the California agreement required Magini to forfeit her assets of jewelry, cash, and interests in real and personal property.* She was sentenced in North Carolina on October 24, 1983. When the court conducted the Rule

* In 1986 the California district court sentenced her to ten years.

11 colloquy, Magini gave no indication that she pleaded guilty unwillingly or was dissatisfied with any of her attorneys.

The California district court, in the course of accepting Magini's plea, became concerned about the quality of Magini's representation. Consequently, several special hearings were held in January and February of 1984 to determine whether David and Susan Beauvais should be held in contempt because of their failure to return Magini's property and their attempt to obtain fees while David Beauvais was a panel attorney. Stroud testified under subpoena at one of those hearings, although his conduct was not at issue in California. As a result of the hearings, the court removed David and Susan Beauvais from the list of panel attorneys available for court appointments because their conduct fell "well below" the acceptable standard and they failed to perform legal duties in a professional, ethical manner.

Stroud ultimately received $26,400 for representing Magini. It was comprised of the original $2,200 cash and the emerald worth $1,200, plus proceeds from additional jewelry, which Stroud sold for $17,500, and $5,500 released by Magini from other sources. He also obtained possession of a silver tea service which he returned in 1988 after being ordered to do so by the North Carolina district court.

On April 27, 1989, Magini filed a section 2255 motion with the district court for the Western District of North Carolina to vacate her sentence, claiming that Stroud's actual conflict of interest adversely affected Magini's defense and thus violated her Sixth Amendment right to counsel. The magistrate to whom the district court referred the matter concluded that Magini had not shown sufficient grounds to establish a claim of ineffective assistance of counsel and that Magini was not entitled to an evidentiary hearing. The district court, adopting the magistrate's Memorandum and Recommendation, denied Magini's request for a hearing, granted the government's motion for summary judgment, and dismissed her petition.

## II

Magini argues that the district court applied the wrong legal standard in reviewing her conflict of interest claim and that the court should have held an evidentiary hearing to determine whether an actual conflict of interest existed that adversely affected her defense.

### A

Magini claims that her Sixth Amendment right to counsel was violated because Stroud was operating under a private, pecuniary conflict of interest while representing her. Specifically, she alleges that the adverse effect of Stroud's private, pecuniary interest is that Stroud persuaded her to plead guilty, rather than proceed to trial. She also claims that he did not negotiate a forfeiture provision in the North Carolina plea agreement because such a provision would have deprived him of his fee. Her thesis is that the attorney might have negotiated forfeiture in exchange for a lighter prison term.

At a minimum, the Sixth Amendment right to effective assistance of counsel encompasses the attorney's duty of loyalty to the client and, concomitantly, the duty to avoid conflicts of interest. *See Strickland v. Washington,* 466 U.S. 668, 688, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984); *United States v. Tatum,* 943 F.2d 370 (4th Cir.1991). A defendant asserting a conflict of interest claim must establish that an actual conflict of interest existed and that it adversely affected counsel's performance. *Cuyler v. Sullivan,* 446 U.S. 335, 350, 100 S.Ct. 1708, 1719, 64 L.Ed.2d 333 (1980). The defendant need not demonstrate prejudice if the conflict of interest actually affected the adequacy of the legal representation. *Id.* at 349, 100 S.Ct. at 1719. A conflict which causes counsel to fail to explore possible plea negotiations may implicate the Sixth Amendment right to counsel. *See Hill v. Lockhart,* 474 U.S. 52, 58–59, 106 S.Ct. 366, 370–71, 88 L.Ed.2d 203 (1985); *Holloway v. Arkansas,* 435 U.S. 475, 490–91, 98 S.Ct. 1173, 1181–82, 55

L.Ed.2d 426 (1978); *Tatum*, 943 F.2d at 376.

Although conflicts of interest usually occur when an attorney represents multiple clients, *see, e.g., Hoffman v. Leeke*, 903 F.2d 280, 285–86 (4th Cir.1990); *Thomas v. Foltz*, 818 F.2d 476, 481 (6th Cir.), *cert. denied*, 484 U.S. 870, 108 S.Ct. 198, 98 L.Ed.2d 149 (1987), a conflict may also exist between an attorney's private interests and those of the client. *See Reckmeyer v. United States*, 709 F.Supp. 680, 688–89 (E.D.Va.1989) ("Counsel whose interests diverge from that of the defendant-client cannot render competent legal services ..."), *aff'd*, 900 F.2d 257 (unpublished opinion) (4th Cir.1990), *cert. denied*, — U.S. ——, 111 S.Ct. 131, 112 L.Ed.2d 98 (1990); *Walberg v. Israel*, 766 F.2d 1071 (7th Cir.), *cert. denied*, 474 U.S. 1013, 106 S.Ct. 546, 88 L.Ed.2d 475 (1985); *United States v. Hearst*, 638 F.2d 1190 (9th Cir.1980), *cert. denied*, 451 U.S. 938, 101 S.Ct. 2018, 68 L.Ed.2d 325 (1981).

■ To prevail, Magini must therefore establish that an actual conflict of interest existed and that the conflict adversely affected Stroud's performance. If Stroud was not influenced by private pecuniary concerns or did not choose between conflicting interests, the simple possibility of a conflict would not support a claim of a Sixth Amendment violation. *See United States v. Mers*, 701 F.2d 1321, 1328 (11th Cir.), *cert. denied*, 464 U.S. 991, 104 S.Ct. 481, 482, 78 L.Ed.2d 679 (1983); *Thomas*, 818 F.2d at 481.

Magini has clearly alleged a conflict of interest claim. In her allegation that Stroud had an actual conflict, Magini points to several specific facts that suggest an actual conflict between her interests and Stroud's and alleges that Stroud chose a course of action which furthered his interest and diminished hers—foregoing trial and negotiating a plea without a forfeiture provision. Nevertheless, the magistrate analyzed Magini's petition solely as an incompetency claim. Because it framed the issue as one of attorney competence, the district court did not address the attorney conflict issues that Magini presented; thus, the court's analysis is incomplete.

**B**

The district court also rejected Magini's request for an evidentiary hearing on the ground that her allegations were refuted by statements she made during the Rule 11 colloquy.

We, however, do not find Magini's testimony that she had voluntarily entered the guilty plea and was satisfied with her attorneys' services dispositive. At the time of sentencing in 1983, Magini did not know the extent of her attorneys' conduct regarding her financial assets. She did not receive and review the transcripts of the California hearings and Stroud's accounting of her assets until 1987, after petitioning the court for them.

■ Section 2255 provides for an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief...." 28 U.S.C. § 2255. A federal court in a habeas proceeding must hold an evidentiary hearing when the petitioner alleges facts which, if true, would entitle her to relief. *Townsend v. Sain*, 372 U.S. 293, 312, 83 S.Ct. 745, 756, 9 L.Ed.2d 770 (1963). When a colorable Sixth Amendment claim is presented, and where material facts are in dispute involving inconsistencies beyond the record, a hearing is necessary. *See Becton v. Barnett*, 920 F.2d 1190, 1192 (4th Cir.1990); *Moore v. U.S.*, 950 F.2d 656, 661 (10th Cir.1991).

Accordingly, Magini should have an evidentiary hearing to determine whether she meets both prongs of the *Cuyler* standard, an actual conflict of interest which had an adverse effect on her defense. Chief among relevant points to be determined are questions concerning Stroud's motivation in excluding forfeiture in the North Carolina plea agreement and its possible effects and his motivation in recommending against trial.

■ Our review of the record reveals that several genuine issues of material fact exist that, if true, would support Magini's

claim that Stroud had an actual conflict of interest. Magini claims that Stroud obtained jewelry on three separate occasions and that he attempted to gain possession of her Mexican property. She alleges that Stroud had agreed not to sell her jewelry without her permission and that she never gave Stroud permission to sell her jewelry. Conversely, Stroud states that he had agreed only to exercise his best efforts to get the highest price possible for the jewelry.

Magini's claim that the conflict of interest resulted in an adverse effect on her defense is more problematic. Magini states that one adverse effect of Stroud's alleged conflict of interest is that she was deprived of a trial. She claims that she intended to go to trial, was surprised when Stroud advised her to plead, and was persuaded to plead only when Stroud told her that he was not ready for trial and that the court would not grant a continuance. Stroud's affidavit states, in a conclusory manner, that he was ready for trial, but he does not offer any evidence to support that statement. According to Magini, a second adverse effect was Stroud's failure to negotiate a forfeiture of her assets in North Carolina. In that regard, Stroud has not responded to Magini's allegation that a private agreement existed between Stroud and the California United States Attorney which enabled him to collect his fee despite the California agreement's forfeiture provision. An evidentiary hearing in the district court is the appropriate forum in which to evaluate the effect of a conflict of interest.

We conclude, therefore, that Magini is entitled to an evidentiary hearing in order to resolve the factual disputes and to analyze her conflict of interest claim according to the *Cuyler* standard. Although Magini has only a few months left of her sentence, the pursuit of the truth-finding process compels us to reverse the district court's summary judgment order and remand for appropriate proceedings.

REVERSED AND REMANDED.

