**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                          No. 94-5666

ANTOINE DWAYNE WELLS,
Defendant-Appellant.

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Robert D. Potter, Senior District Judge.
(CR-93-264-P)

Argued: February 2, 1996

Decided: April 12, 1996

Before ERVIN and MOTZ, Circuit Judges, and BLAKE, United
States District Judge for the District of Maryland,
sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Julian Hugh Wright, Jr., Frank Hilton Lancaster, ROBIN-
SON, BRADSHAW & HINSON, P.A., Charlotte, North Carolina, for
Appellant. Marlene Yvette Bishop, Assistant United States Attorney,
Robert James Conrad, Jr., Chief, Criminal Division/Assistant United
States Attorney, Charlotte, North Carolina, for Appellee. **ON BRIEF:**
Mark T. Calloway, United States Attorney, Charlotte, North Carolina,
for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Antoine Dwayne Wells, who pled guilty to five drug and firearm crimes, maintains that his plea and sentences should be vacated because the district court: (1) failed to act in a timely fashion on his request for substitution of counsel; (2) at sentencing, denied his requests to substitute counsel and to withdraw his guilty plea; and (3) adopted a "blanket rule" against the withdrawal of guilty pleas prior to sentencing. Finding no reversible error, we affirm.

I.

In December, 1993, Wells was indicted for numerous drug and firearm offenses and was placed in jail to await trial. While in jail, Wells sent a handwritten note to the clerk of the district court, which stated in its entirety:

> Hello! My name is Antoine Dwayne Wells. I would like to have another Attorney at law because I feel like Mr. Marshall A. Swann my Attorney now, is not represent[sic] and that he's not going to defend my case for me. Yes, I would like to have a copy of my past criminal records sent to me.
>
> Thank you!

The court file indicates that the letter was received by the clerk's office on March 11, 1994, and was apparently placed in Wells' file at some time after that. No action was taken on the letter.

Nearly seven weeks later, on April 25, 1994, the day trial was due to commence, Wells pled guilty to five of the charges against him. At that time, the district court engaged Wells in a full Rule 11 colloquy in which Wells affirmed under oath that he had discussed the indict-

2

ment and the consequences of a guilty plea with his attorney, Swann. Wells further affirmed that he was freely and voluntarily entering the plea and that he was "entirely satisfied with the service of [his] attorney in this matter." The district court set a sentencing hearing for August 16, 1994, approximately fifteen weeks later.

Wells made no effort to communicate with the court prior to the scheduled sentencing. Nevertheless, on the day of sentencing, Wells informed the court that he would like new counsel and, for the first time, brought his March note to the court's attention. Wells explained that he had not wanted to go to trial with Swann as his counsel because he believed that Swann had lied to him about the availability of discovery. Wells also asked to withdraw his guilty plea. The district court considered and rejected Wells' complaints, ruling that his guilty plea would stand and that he would not be permitted to substitute counsel. The court ultimately sentenced Wells to forty years imprisonment.

II.

Wells asserts that the district court denied him his Sixth Amendment rights by failing to "act upon" his request for a new counsel before the date on which trial was due to commence. Wells claims that this asserted error "infected" his entry of a guilty plea and, therefore, requires that his plea and sentence be vacated. It is unfortunate that Wells' handwritten note was not brought to the district court's attention earlier. (Apparently, like the court itself, neither Swann nor the prosecutors were aware of the note until Wells mentioned it at the sentencing hearing). However, we cannot conclude that the district court's failure to act sooner in response to Wells' note constitutes reversible error.

As Wells' able appellate attorneys remind us, "[a]n essential element of the Sixth Amendment's protection" is a defendant's "reasonable opportunity to secure counsel of his own choosing." United States v. Gallop, 838 F.2d 105, 107 (4th Cir.), cert. denied, 487 U.S. 1211 (1988). This right to choose counsel is not without limitation, however, and consequently, "a defendant does not have an absolute right to substitution of counsel." United States v. Mullen, 32 F.3d 891, 895 (4th Cir. 1994). Instead, the right is conditioned on a showing of

3

"good cause," and the decision as to whether to grant a substitution lies in the trial court's discretion. Id. We evaluate whether a court abused its discretion in denying a substitution motion by considering three factors: "[1] [t]imeliness of the motion; [2] adequacy of the court's inquiry into the defendant's complaint; and[3] whether the attorney/client conflict was so great that it had resulted in total lack of communication preventing an adequate defense." Id. (quoting Gallop, 838 F.2d at 108); see also United States v. Morsley, 64 F.3d 907, 918 (4th Cir. 1995), cert. denied, 116 S. Ct. 749 (1996).

Although Wells requested new counsel by sending the court a handwritten note rather than by filing a motion, for purposes of our analysis here, we will assume that the note was equivalent to a motion to substitute counsel. As to the first factor in the Mullen test, Mullen itself teaches that a motion filed seven weeks prior to the trial date is timely. 32 F.3d at 895-96. Thus, the first factor--the timeliness of the request for substitution of counsel--weighs in Wells' favor.

The second factor, however, does not. The court below engaged in an inquiry that, under Mullen, must be regarded as adequate. First, Mullen makes it clear that it is not necessarily improper for the court to conduct its inquiry on the day the trial is due to begin. Indeed, in Mullen, we expressly held that even though the defendant had filed her motion in a timely manner, the court had conducted an adequate inquiry by addressing her complaints about counsel on the date trial was due to commence. Mullen, 32 F.3d at 896. Furthermore, although the inquiry here (conducted pursuant to Rule 11) was not specifically triggered by or directed to Wells' handwritten letter and so in this respect differs from the inquiry found adequate in Mullen, no case requires that an inquiry be of this specific sort in order to be adequate.[1]

_____

[1] Contrary to Wells' suggestion, United States v. Malave, 22 F.3d 145 (7th Cir. 1994), does not require such a directed inquiry in response to a substitution motion. Malave is not pertinent at this point in our discussion because it did not address the question of whether a Rule 11 colloquy may suffice to dispose of a substitution motion, but instead addressed whether a guilty plea could be characterized as "voluntary" when the defendant expressly stated that he was pleading guilty only because the trial court's denial of his substitution motion left him "no choice." Id. at 148.

Moreover, the substance of the inquiry here was more extensive than that in <u>Mullen</u>. Among the more than thirty probing questions the court asked of Wells to ensure he knew what he was doing in pleading guilty, were the following:

> THE COURT: Are you entering the plea of guilty freely because you are in fact guilty of the crime charged, because you did commit the acts charged in counts One, Two, Six, Eight and Nine of the Bill of Indictment which I've just been over with you?
>
> THE DEFENDANT: Yes, Sir.
>
> THE COURT: Are you entering the plea of guilty freely and voluntarily?
>
> THE DEFENDANT: Yes, sir.
>
> . . .
>
> THE COURT: Have you had ample time to discuss with your attorney the possible defense you may have to these charges?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Are you entirely satisfied with the service of your attorney in this matter?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Are you telling the court you (sic) mind if (sic) clear, you've heard and understand all parts of the proceeding, know what you're doing and want this court to accept your plea of guilty?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Do you have any questions or statements you wish to make to me at this time about what I've just said to you?

THE DEFENDANT: No, sir.

Wells can hardly complain that the court erred in failing to inquire more thoroughly into the basis for his dissatisfaction with counsel when he directly stated, under oath, that he was, in fact, <u>satisfied</u> with his counsel.

What distinguishes this case from <u>Mullen</u> is the evidence as to the third factor--whether there was an extensive breakdown in communication between attorney and client. In <u>Mullen</u> , there was unrebutted evidence that the defendant and her attorney had not spoken for over a month before trial; this evidence supported the defendant's claim that she needed a new attorney and more time to prepare for trial. When in the face of this evidence the district court nonetheless required the defendant to go to trial immediately either with her original attorney or <u>pro se</u>, she proceeded <u>pro se</u> even though she did not understand anything about presenting a defense in a criminal trial-- and presented none. <u>Mullen</u>, 32 F.3d at 894. We concluded that this lack of communication between the defendant and her counsel prevented her assertion of an adequate defense. <u>Id.</u> at 897. There is no similar evidence in the record of this case. Unlike the defendant in <u>Mullen</u>, Wells did not continue to insist that he needed a new lawyer when his trial date arrived. Instead of drawing the court's attention to his letter or complaining in any manner about his attorney, Wells swore under oath that he "had ample time to discuss" with his attorney "the possible defense" to the charges against him and that he was "entirely satisfied" with his attorney's services. This testimony refutes the existence of an extensive breakdown in communication between attorney and client.

Accordingly, Wells has not established that the district court's response to his request to substitute counsel violated his Sixth Amendment rights.

III.

Wells next contends that the district court erred at the sentencing hearing in refusing to grant his requests to substitute counsel and to withdraw his guilty plea.

6

A.

We have already concluded that the district court did not err in failing to permit Wells to substitute counsel at the time of the plea hearing. The same factors apply to determine if the court abused its discretion in refusing to permit Wells to substitute counsel at sentencing. As to timeliness, although the issue is a good deal closer in view of Wells' fifteen weeks of silence after the entry of his plea, we will assume his request was timely because it was initially made well prior to the trial date.

However, once again the court's inquiry--particularly in view of the prior Rule 11 colloquy--was adequate. When apprised of Wells' complaint and letter, the district court specifically asked Wells the reason for his dissatisfaction with his counsel. Wells responded that he believed his counsel had lied to him by telling him a motion for discovery did not exist. The court then asked Wells' counsel, Swann, for a response; Swann stated that he had tried to explain to Wells that the government had an open file policy and, therefore, no motion for discovery was necessary. Swann indicated that he thought Wells was upset because Wells knew that other defendants had received written discovery documents, and Wells believed that Swann was doing a poor job by failing to provide him with those documents. After considering the facts, the district court told Wells that because of the government's open file policy, his attorney had access to all relevant documents and that no substitute counsel could supply Wells with anything more. The district court's inquiry at the sentencing into the reasons for Wells' dissatisfaction with his attorney appears to be roughly comparable to the district court's inquiry in Mullen. See Mullen, 32 F.3d at 896. Moreover, this inquiry followed the full Rule 11 inquiry at the plea hearing.

Finally, again there is no evidence that the attorney/client conflict was so great at sentencing that it had resulted in a total lack of communication that prevented an adequate defense. At the sentencing hearing, Swann stated, without revealing the topic of conversation, that he had "talked to Wells recently." Additionally, Wells never cited a breakdown in communication as one of his complaints about his attorney. Cf. Mullen, 32 F.3d at 894 (defendant emphasized that she and her attorney had not spoken in more than a month). Furthermore,

7

the district court told Wells that he was going to have the same problems with a new counsel--presumably including a communication problem--if Wells could not understand the effects of the government's open file policy. If the district court had only focused on whether Wells' attorney was competent, this would have been error. See United States v. Magini, 973 F.2d 261, 264 (4th Cir. 1992). But here the court addressed Wells' attorney's competence in the context of its observation that Wells would have the same problem (involving communication about discovery) with any attorney and therefore there was, presumably, nothing unique in the complaints Wells had about Swann. Cf. Morsley, 64 F.3d at 918 ("district court is not compelled to substitute counsel when the defendant's own behavior creates a conflict"). Accordingly, we find the district court did not abuse its discretion in denying Wells' motion to substitute counsel prior to sentencing.

B.

Similarly, we do not find an abuse of discretion in the district court's refusal to permit Wells to withdraw his guilty plea. A defendant has no absolute right to withdraw a guilty plea. United States v. Price, 988 F.2d 712, 717 (7th Cir. 1993). Instead, the district court has discretion as to whether to permit the withdrawal based on a defendant's showing of "any fair and just reason." Fed. R. Crim. P. 32(d). The court must balance the following factors:

> First, whether the defendant has offered credible evidence that his plea was not knowing and voluntary.
>
> Second, whether the defendant has credibly asserted his innocence.
>
> Third, whether there has been a delay between the entering of the plea and the filing of the motion.
>
> Fourth, whether the defendant has had close assistance of competent counsel.
>
> Fifth, whether withdrawal will cause prejudice to the government.

8

> Sixth, whether withdrawal will inconvenience the court and waste judicial resources.

United States v. Moore, 931 F.2d 245, 248 (4th Cir.), cert. denied, 502 U.S. 857 (1991).

With regard to the first factor, Wells asserted at sentencing that he would not have pled guilty but for the fact that he mistrusted his attorney. He offered no evidence to support this assertion other than the inference that can be drawn from his March 11 note to the court requesting substitute counsel. However, the fact that Wells at one time desired new counsel provides a weak inference that he would not have pled guilty but for his dissatisfaction with counsel.**2** Unlike the defendant in Magini (upon which Wells heavily relies), Wells did not and does not assert that after he pled guilty he learned of new evidence supporting his request for new counsel, let alone does he offer any evidence to support such a claim. Cf. Magini , 973 F.2d at 264. Wells specifically stated at the plea hearing that he was entirely satisfied with his attorney's services. The Supreme Court noted in Blackledge v. Allison, 431 U.S. 63 (1977), that"[s]olemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal . . . ." Id. at 74. Accordingly, Wells' later argument--without any new evidentiary support--that he would not have pled guilty but for his attorney, contradicted by his solemn declaration that he was "entirely satisfied" with his attorney, is insufficient to show that his plea was not voluntary. See United States v. Puckett, 61 F.3d 1092, 1099 (4th Cir. 1995) (noting that "an appropriately conducted Rule 11 proceeding raises a strong presumption that the plea is final and binding") (quotation omitted); United States v. Trussel, 961 F.2d 685, 689 (7th Cir. 1992) ("A defendant who presents a reason for withdrawing his plea that contradicts the answers he

_____

**2** This case is distinguishable from Malave because in that case the defendant specifically stated to the court at the plea hearing that he was pleading guilty because the denial of his substitution motion left him "no choice." Malave, 22 F.3d at 146. It was only in this context that the Seventh Circuit emphasized the importance of the "great lengths" to which the trial court had gone to ensure that the defendant's plea was not in fact the result of the denial of his substitution motion. Id. at 148.

9

gave at a Rule 11 hearing faces an uphill battle in persuading the judge that his purported reason for withdrawing his plea is `fair and just.'").**3**

Examination of the remaining factors further demonstrates that there was no error in refusing to permit Wells to withdraw his plea. As to the second factor, in requesting to withdraw his plea Wells did not allege that he was innocent of the crime. Moreover, even if he had so alleged (as he now argues on appeal), the mere allegation of innocence, without any new evidentiary support, is not entitled to much weight. Cf. United States v. Cray, 47 F.3d 1203, 1209 (D.C. Cir. 1995) ("A defendant appealing the denial of his motion to withdraw a guilty plea . . . must do more than make a general denial [of guilt].") With regard to the third factor, between the date of Wells' entry of the plea and his motion to withdraw, there was a delay of over fifteen weeks -- a substantial delay. As to the fourth factor, Wells has not shown that he was not provided with the close assistance of competent counsel. See United States v. Lambey, 974 F.2d 1389 (4th Cir. 1992) (requiring proof that the attorney's performance fell below an objectively reasonable professional standard and that, but for the attorney's error, the defendant would have gone to trial), cert. denied, 115 S. Ct. 672 (1994); see also United States v. Sparks, 67 F.3d 1145, 1153 (4th Cir. 1995) (same); United States v. DeFreitas, 865 F.2d 80, 82 (4th Cir. 1989) (same). Wells does not allege that his counsel's conduct was objectively unreasonable. Finally, although there was no evidence presented as to the fifth and sixth factors, we note that the trial court and the government would have experienced the typical scheduling difficulties had the court permitted Wells to withdraw his plea on the date of sentencing. Balancing the above factors, we cannot conclude that the district court abused its discretion in refusing to permit Wells to withdraw his plea.

_____

**3** Wells' contention that if everything a defendant concedes at a Rule 11 hearing is binding, then there would never be a successful motion to withdraw, has some force. However, in this case, Wells' sole argument in support of his motion to withdraw directly contradicts his sworn explicit statement at the plea hearing that he was "entirely satisfied" with Swann.

IV.

Wells' final argument is that the district court did not balance the above Moore factors but instead adopted a"blanket rule" that defendants may not withdraw guilty pleas on the date set for sentencing. The record does not reflect the adoption of a blanket rule. Although the district court did not specifically cite the Moore decision in making its oral ruling, the court addressed the primary concerns set forth in that decision. In Sparks, we explained that the Moore test is not rigid, but helps guide the district court to its"inescapably impressionistic judgment" as to whether the defendant has provided "fair and just" reasons for withdrawal. Sparks, 67 F.3d at 1154. We noted that the first, second and fourth Moore factors are the most significant. Id. The burden is on the defendant to establish these factors. Id.

In seeking to withdraw his guilty plea, Wells asserted to the district court that he would have gone to trial but for his dissatisfaction with his attorney. In response to this assertion, the district court reminded Wells of the questions he had been asked at his Rule 11 hearing and informed him that the court could not find his plea involuntary when he said one thing at the plea hearing but now claimed something else at sentencing; the court "can't sit there and decide what somebody's thinking if they don't tell me." Thus implicitly the district court concluded, consistent with the first Moore factor, that Wells had provided insufficient evidence to indicate that his plea was involuntary (his assertion that he was not satisfied with Swann could not overcome his sworn statement that he was entirely satisfied with Swann). As to the second factor, Wells did not allege his innocence in support of his motion to withdraw and the court specifically found a factual basis for his guilt (the court stated that the "evidence shows that you [Wells] are guilty"). With regard to the fourth factor, Wells did not provide proof that Swann's conduct fell below an objectively reasonable standard and the court specifically found that Swann had provided competent representation (the court stated that Swann was a "good attorney" and had "done everything that I think he could do in [Wells'] case").

In sum, there is no merit to the claim that the district court denied Wells' request to withdraw his guilty plea based on a "blanket rule" that defendants cannot withdraw guilty pleas on the date of sentencing. In fact, the court addressed Wells' argument for withdrawing his

11

plea, and the evidence as to the primary <u>Moore</u> factors makes it plain that the district court did not abuse its discretion in denying Wells' motion to withdraw his guilty plea.

<u>AFFIRMED</u>

12