Nathaniel C. RILEY II, Petitioner,

v.

State of SOUTH CAROLINA; and
Charles M. Condon, Attorney General
of the State of South Carolina, Re-
spondents.

No. C.A 9:99–728–20RB.

United States District Court,
D. South Carolina,
Beaufort Division.

Jan. 25, 2000.

As Amended Feb. 1, 2000.

Nathaniel C. Riley II, petitioner pro se.

Charles M. Condon, Attorney General, John W. McIntosh, Chief Deputy Attorney General, Donald J. Zelenka, Assistant Deputy Attorney General, for defendant.

## ORDER

HERLONG, District Judge.

This matter is before the court for review of the Report and Recommendation of United States Magistrate Judge Wallace W. Dixon made in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02 for the District of South Carolina. Nathaniel C. Riley, II ("Riley"), a state prisoner proceeding *pro se*, seeks *habeas* relief under 28 U.S.C. § 2254. In his Report and Recommendation, Magistrate Judge Dixon recommends that the respondents' motion for summary judgment be granted. For the reasons below, the court adopts the magistrate judge's recommendation, grants the respondents' motion for summary judgment, and dismisses Riley's petition.

### I. FACTUAL AND PROCEDURAL HISTORY

On June 30, 1997, Riley was convicted on indictments for purchasing crack cocaine in violation of S.C.Code § 44–53–375, purchasing crack cocaine within one-half mile of an elementary school in violation of section 44–53–445, and assaulting a police officer. Riley was sentenced to fifteen years for purchasing crack cocaine, one year concurrent for purchasing crack cocaine within the proximity of a school, and one year concurrent for resisting arrest.[1] He was represented by a public defender.

Riley appealed and was represented by the South Carolina Office of Appellate Defense. His counsel filed a no-merit *Anders*

---

1. The jury found Riley guilty of resisting arrest, which is a lesser included offense of assaulting a police officer.

brief, but the South Carolina Court of Appeals directed briefing on the issues of double jeopardy and conflict of interest. In addition to counsel's brief (which only addressed the double jeopardy and conflict issues), Riley submitted a supplemental brief that also addressed the issues of unlawful arrest and lack of subject matter jurisdiction. On December 2, 1998, the court of appeals affirmed the conviction. The court's opinion examined the double jeopardy and conflict issues but ignored the unlawful arrest and subject matter jurisdiction issues. Riley petitioned for a writ of certiorari and raised the double jeopardy, conflict, unlawful arrest, and subject matter jurisdiction issues. The South Carolina Supreme Court denied the petition on May 14, 1999.

■ On March 19, 1999, Riley filed the instant petition, alleging four grounds for relief: (1) double jeopardy; (2) ineffective assistance of counsel due to a conflict of interest; (3) unlawful arrest due to a violation of the Fourth Amendment; and (4) lack of subject matter jurisdiction. On July 1, 1999, the respondents moved for summary judgment. On August 2, 1999, Riley filed materials in opposition to the motion for summary judgment. On November 22, 1999, the magistrate judge recommended granting the motion for summary judgment and dismissing the petition. On December 10, 1999, Riley filed timely objections to the Report and Recommendation.[2]

## II. DISCUSSION OF THE LAW

### A. Objections

■ The magistrate judge makes only a recommendation to this court, and the recommendation has no presumptive weight. The responsibility to make a final determination remains with this court. *See Mathews v. Weber*, 423 U.S. 261, 270, 96 S.Ct.

549, 46 L.Ed.2d 483 (1976). The court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the magistrate judge or recommit the matter with instructions. *See* 28 U.S.C. § 636(b)(1). Riley's seventy-seven page filing objects to the magistrate judge's recommendations on all four grounds. Therefore, the court will review the petition *de novo.*

### B. 2254 Standard

■ In order for Riley to prevail on a 2254 petition, he must demonstrate that the state court's "adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). This provision "places at least three limitations upon the availability of federal *habeas* relief: the petitioner must demonstrate that the state court's adjudication of his federal claim was (1) contrary to or an unreasonable application of (2) clearly established federal law (3) as determined by the Supreme Court of the United States." *Green v. French,* 143 F.3d 865, 869 (4th Cir.1998). These requirements are essentially met "when the state courts have decided the question by interpreting or applying the relevant precedent in a manner that reasonable jurists would all agree is unreasonable." *Id.* at 870.

### C. Grounds

#### 1. Ground One—Double Jeopardy

##### a. Federal Law

■ Riley claims that the convictions and sentences for purchasing crack cocaine

2. Riley had ten days from the filing of the Report and Recommendation in which to file objections. This period excludes weekends and holidays and allows an additional three days for filing by mail. The Report and Recommendation was filed on November 22, 1999, which gave Riley until December 10,

1999, to file objections. Under *Houston v. Lack,* 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988), the filing date for prisoners is the date of delivery to prison officials. The postmark on the objections is December 10, 1999. Therefore, the objections are timely.

in violation of · S.C.Code § 44–53–375(B) ("section 375(B)") and for purchasing crack cocaine in the proximity of a school in violation of S.C.Code § 44–53–445(B)(3) ("section 445(B)(3)") violate the Double Jeopardy Clause of the United States Constitution. *See* U.S. Const. amend. V (conferring right not to be "twice put in jeopardy" for the same criminal offense). "Double jeopardy, rather than being a single doctrine, is actually comprised of three separate though related rules, prohibiting (1) re-prosecution for the same offense following acquittal, (2) re-prosecution for the same offense following conviction, and (3) multiple punishment for the same offense." *Patton v. North Carolina*, 381 F.2d 636, 643–44 (4th Cir.1967).

■ Riley has had only one trial, and therefore the third rule is at issue in the instant petition. Applying this rule, it initially must be determined whether the offenses at issue are the "same offense." If not, then the Double Jeopardy Clause does not apply. The test for determining whether two offenses are the same is as follows: "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932). Under this test, the two statutory provisions are the same offense because all the elements necessary to convict Riley under section 375(B)—(1) purchase (2) of crack cocaine—are present in section 445(B)(3)—(1) purchase (2) of crack cocaine (3) in the proximity of a school.

■ However, there are times when failing the "same offense" test does not implicate the Double Jeopardy Clause. The assumption of the *Blockburger* rule is that the legislature does not intend to punish the same offense under two different statutes. *See Whalen v. United States*, 445 U.S. 684, 693, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980). This presumption,

however, can be overcome if there is a clear indication of contrary legislative intent. *See Missouri v. Hunter*, 459 U.S. 359, 366, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983). In essence, "[w]ith respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Id.*

### b. State Court's Adjudication

■ In the instant case, the South Carolina Court of Appeals rejected Riley's double jeopardy claim, citing to (1) *Blockburger*; (2) *Matthews v. State*, 300 S.C. 238, 387 S.E.2d 258, 259 (1990), from which the court cited a parallel proposition to *Missouri v. Hunter*: "[T]he *Blockburger* rule is not controlling when legislative intent is clear from the face of the statute or the legislative history"; and (3) *State v. Brown*, 319 S.C. 400, 461 S.E.2d 828, 832 (1995), from which the court cited the following language: "We wish to emphasize that there is no prohibition against the contemporaneous prosecution by the State for both possession with intent to distribute and distribution of crack cocaine and the related school charges where, like this case, they arise out of the same conduct."

Although not explicitly stated, the South Carolina court clearly felt that the legislature's intent was for the two separate statutes, sections 375(B) and 445(B)(3), to punish the same offense. Indeed, evidence of this intent exists in the fact that section 375(B) imposes imprisonment for not more than fifteen years for a first offense, twenty-five years for a second offense, and thirty years for a third offense; whereas section 445(B)(3) imposes imprisonment for not more than one year. The existence of section 445(B)(3) would completely undermine section 375(B) unless the legislature intended them to be separate offenses that impose cumulative punishment. In addition, section 445 has since been changed to read "it is a separate criminal offense" rather than "it is unlawful" (as it

said when Riley was indicted). This change further represents the intent for section 445 to impose punishment that is cumulative to punishment under section 375.

In conclusion, it cannot be said that the South Carolina court's "adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1). In fact, its decision was entirely consistent with a reasonable application of federal law. Thus, Riley cannot obtain relief under the first ground of his section 2254 petition.

## 2. Ground Two—Conflict of Interest

### a. Federal Law

■■■■■ Riley claims that he received ineffective assistance of counsel at trial in violation of his Sixth Amendment right to counsel because his counsel had a conflict of interest. Specifically, Riley claimed his counsel told him before trial (1) that she and the investigating officer had "worked a lot of cases together" and (2) that "under no grounds [could] she win this case." The court agrees with the magistrate that the second statement did not reflect a conflict of interest, but instead indicated counsel's opinion of Riley's chances of prevailing at trial. The first statement, however, was not addressed by the magistrate judge and is more problematic. Even so, it does not provide grounds for relief.

■■■■■ The Sixth Amendment to the United States Constitution "guarantees criminal defendants the right to effective assistance of counsel, including the right to representation free from conflicts of interest." *Gilbert v. Moore*, 134 F.3d 642, 652 (4th Cir.1998). Counsel is constitutionally ineffective if: (1) counsel's performance was deficient, or fell below an objective standard of reasonableness; and (2) this deficient performance prejudiced the client's case so that the criminal defendant was deprived of a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687–88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish the first prong, a petitioner asserting a conflict of interest claim must

demonstrate (1) that an actual conflict of interest existed and (2) that it adversely affected counsel's performance. *See Cuyler v. Sullivan*, 446 U.S. 335, 350, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). If these two prongs are met, the petitioner need not demonstrate prejudice. *United States v. Magini*, 973 F.2d 261, 263 (4th Cir.1992).

■■■■ In the instant case, Riley fails to demonstrate either that an actual conflict of interest existed or that his counsel's performance suffered any adverse effect from the alleged conflict. First, a statement by defense counsel that she "worked with" the investigating officer does not demonstrate an actual conflict. The Fourth Circuit has expounded upon what constitutes an actual conflict:

> An attorney has an actual conflict when he actively represents conflicting interests. His representation of conflicting interests, however, is not always as apparent as when he formally represents two parties who have hostile interests. He may harbor substantial personal interests which conflict with the clear objective of his representation of the client, or his continuing duty to former clients may interfere with his consideration of all facts and options for his current client. When the attorney is actively engaged in legal representation which requires him to account to two masters, an actual conflict exists when it can be shown that he took action on behalf of one.

*United States v. Tatum*, 943 F.2d 370, 375–76 (4th Cir.1991). The statement of Riley's counsel indicated that Riley's counsel and the investigating officer had been involved with the same cases before. This statement would not lead a reasonable mind to believe that Riley's counsel was actively working with the investigating officer on the instant case or that Riley's counsel was representing the interests of the state. "The possibility of a conflict of interest is insufficient to impugn a criminal conviction." *Cuyler*, 446 U.S. at 350, 100

S.Ct. 1708. In sum, the statement does not demonstrate an actual conflict.

▮ Furthermore, even if there were an actual conflict, Riley fails to demonstrate that it adversely affected his counsel's representation of him. Riley does not point to any particular instances of an adverse effect. Instead, Riley cites *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978), for the proposition that a petitioner need not demonstrate an actual conflict with adverse consequences when the petitioner had objected to the representation at trial and when the trial judge failed to inquire into the conflict. The court acknowledges that the *Holloway* Court held that a Sixth Amendment violation occurs in certain situations when the trial judge fails to inquire into a conflict of interest. The court also acknowledges that the *Cuyler* requirements—that an actual conflict adversely affected counsel's performance—apply when no objection is made at trial by the defendant. *See Cuyler*, 446 U.S. at 348, 100 S.Ct. 1708 (holding that "in order to establish a violation of the Sixth Amendment, a defendant *who raised no objection at trial* must demonstrate that an actual conflict of interest adversely affected his lawyer's performance" (emphasis added)). The court, however, finds that *Holloway* is distinguishable from the instant case and that the *Cuyler* requirements are applicable.

*Holloway* involved a motion to appoint separate counsel by an attorney who was forced to represent three co-defendants. *See Holloway*, 435 U.S. at 478, 98 S.Ct. 1173. The attorney claimed that it would be a conflict of interest for him to represent all three because confidential information received from the co-defendants would prevent him from cross-examining the co-defendants. *See id.* The trial court denied the motion without inquiring into the conflict. The Supreme Court held that "the failure [of the judge either to appoint separate counsel or to take adequate steps to ascertain whether a conflict existed], in the face of the representations made by counsel weeks before trial and again be-

fore the jury was empaneled, deprived petitioners of the guarantee of 'assistance of counsel.'" *Id.* at 484, 98 S.Ct. 1173.

▮ This holding is not applicable to Riley's situation for two reasons. First, it is relevant only in the context of an attorney representing multiple defendants. *See Cuyler*, 446 U.S. at 346, 100 S.Ct. 1708 ("*Holloway* requires state trial courts to investigate timely objections to *multiple representation*." (emphasis added)). Multiple representation is a special situation warranting the court's inquiry because it inherently presents an opportunity for a conflict of interest. As the *Cuyler* Court stated:

> Since a possible conflict inheres in almost every instance of multiple representation, a defendant who objects to multiple representation must have the opportunity to show that potential conflicts impermissibly imperil his right to a fair trial. But unless the trial court fails to afford such an opportunity, a reviewing court cannot presume that the possibility for conflict has resulted in ineffective assistance of counsel

*Cuyler*, 446 U.S. at 348, 100 S.Ct. 1708. Because the issue of multiple representation is not involved in the instant case, the trial court did not have a duty to inquire into the conflict.

The other basis upon which to distinguish *Holloway* is that it involved an objection by the attorney himself. In the instant case, it was Riley, not his attorney, who made the objection at trial. This distinction is important for two reasons. First, the *Holloway* Court's holding specifically referred to the trial court's failure as being *"in the face of the representations made by counsel."* *Holloway*, 435 U.S. at 484, 98 S.Ct. 1173 (emphasis added). Furthermore, the Court stressed that representations by a defense attorney regarding a conflict must be given heightened consideration because the attorney has an obligation to report conflicts to the court and is in the best position to know whether an actual conflict exists. As the Court stated:

[M]ost courts have held that an attorney's request for the appointment of separate counsel, based on his representations as an officer of the court regarding a conflict of interests, should be granted. In so holding, the courts have acknowledged and given effect to several interrelated considerations. An attorney representing two defendants in a criminal matter is in the best position professionally and ethically to determine when a conflict of interest exists or will probably develop in the course of a trial. Second, defense attorneys have the obligation, upon discovering a conflict of interests, to advise the court at once of the problem. Finally, attorneys are officers of the court, and when they address the judge solemnly upon a matter before the court, their declarations are virtually made under oath. We find these considerations persuasive.

*Id.* at 485–86, 98 S.Ct. 1173 (citations and internal quotations omitted). Therefore, representations by counsel regarding a conflict should be given special credence. This same credence need not be given to a defendant, especially when the court determines (as it did in the instant case) that the defendant was aware of the alleged conflict for nine months prior to the time of trial and failed to seek other counsel. *Cf. id.* at 486–87, 98 S.Ct. 1173 ("When an untimely motion for separate counsel is made for dilatory purposes, our holding does not impair the trial court's ability to deal with counsel who resort to such tactics.").

In sum, the court interprets *Holloway*'s holding not to apply when (1) there is no representation of multiple defendants, *and* (2) the defendant but not the defendant's attorney objects to the representation. Accordingly, the trial judge had no duty to inquire into the alleged conflict, and Riley must demonstrate that an actual conflict adversely affected his counsel's performance. Because Riley fails to demonstrate either an actual conflict or an adverse effect, he cannot demonstrate a Sixth Amendment violation.

### b. State Court's Adjudication

The South Carolina Court of Appeals rejected Riley's conflict claim on the basis of *Langford v. State,* 310 S.C. 357, 426 S.E.2d 793 (1993), from which it quoted two passages: (1) "The mere possibility of a conflict of interest is insufficient to impugn a criminal conviction"; and (2) "Until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for a claim of ineffective assistance of counsel arising from multiple representation." *Id.* at 795. The state appellate court's determination is consistent with this court's conclusion that there was no violation of federal law. Therefore, it cannot be said that the South Carolina court's "adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1). Accordingly, Riley cannot prevail on the second ground of his section 2254 petition.

### 3. Grounds Three and Four

#### a. Procedural Default

Riley's third ground for relief is that he was seized in violation of the Fourth Amendment when he was arrested. Riley's fourth ground is that the trial court lacked subject matter jurisdiction because it convicted him of an offense upon which he was not tried or charged. The magistrate judge recommends dismissal of the third and fourth grounds of Riley's petition because they were procedurally defaulted when they were not presented to the trial court. *See Howard v. Moore,* 131 F.3d 399, 420 (4th Cir.1997) (" 'Errors at trial not objected to, in contravention of State contemporaneous objection rules, are not cognizable in federal *habeas corpus* proceedings, absent a showing of cause for non-compliance and prejudice.' " (quoting *Satterfield v. Zahradnick,* 572 F.2d 443, 446 (4th Cir.1978))). Although the court agrees with the recommendation, procedural default is by no means a foregone

conclusion in the instant case, as explained below.

A petitioner must first exhaust state remedies before seeking federal *habeas* relief. *See* 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State....").[3] A related concept is procedural default.[3] "Under the well-established doctrine of procedural default, a federal *habeas* court may not review a claim that a state court has found to be clearly and expressly defaulted under an independent and adequate state procedural rule unless the prisoner can demonstrate cause for the default and prejudice resulting therefrom or demonstrate that a failure to consider the claims will result in a fundamental miscarriage of justice." *Weeks v. Angelone,* 176 F.3d 249, 269 (4th Cir.1999).[4] The respondents claim that the third and fourth grounds of Riley's petition are procedurally defaulted because there was no contemporaneous objection at trial, as required by South Carolina law. Riley argues that there is no procedural default because he properly exhausted his claims by presenting them to the South Carolina Court of Appeals in his supplemental brief that was filed in addition to his attorney's *Anders* brief.

In order for a claim to be procedurally barred, (1) there must be an independent and adequate state procedural rule under which the claim was defaulted,

and (2) it must be clearly and expressly defaulted. *See id.* With respect to the first prong, a contemporaneous objection rule may provide an adequate and independent state procedural bar. *See id.* South Carolina has a contemporaneous objection rule. *See Pike v. South Carolina Department of Transportation,* 332 S.C. 605, 506 S.E.2d 516, 521 (1998) ("For an issue to be preserved for appeal, it must have been raised to and ruled upon by the trial court."). Because Riley never raised his unlawful arrest or subject matter jurisdiction claims to the trial court, these claims were not preserved for appeal by virtue of the contemporaneous objection rule. Therefore, the first prong of procedural default is met.

With respect to the second prong, the South Carolina court must clearly and expressly find that the claims were defaulted. *See Weeks,* 176 F.3d at 269. "Thus, the mere fact that a federal claimant failed to abide by a state procedural rule does not, in and of itself, prevent this Court from reaching the federal claim: The state court must actually have relied on the procedural bar as an independent basis for its disposition of the case." *Harris v. Reed,* 489 U.S. 255, 261–62, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) (internal quotations omitted). On appeal, the South Carolina Court of Appeals did not even recognize the existence of Riley's unlawful arrest and lack of subject matter jurisdiction claims. Instead, the court affirmed his conviction and only addressed his double jeopardy and conflict claims in a very brief opinion. *See State v. Riley,* No. 98–UP–541 (Dec. 2,

---

3. Exhaustion and procedural default are related concepts:

> To satisfy the exhaustion requirement, a *habeas* petitioner must fairly present his claim to the state's highest court. A claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally defaulted under state law if the petitioner attempted to raise it at this juncture. Thus, the exhaustion requirement is also satisfied when a state procedural rule would bar consideration of the unexhausted claim if the claim was present-

ed to the state court. A claim is procedurally defaulted when it is rejected by a state court on an adequate and independent state procedural ground.

*Weeks,* 176 F.3d at 272 n. 15 (quotations and citations omitted).

4. "A state rule is adequate if it is firmly established and regularly and consistently applied by the state court and is independent if it does not depend[ ] on a federal constitutional ruling." *Id.* at 270 (citations and quotations omitted).

1998) (unpublished) (addressing only the double jeopardy and conflict issues).[5]

The state court's silence with respect to the unlawful arrest and subject matter jurisdiction issues makes it unclear whether it relied upon the state procedural bar, in which case the procedural bar would stand, or whether it rejected the claims on their merits, in which case the procedural bar would be waived. *See Ylst v. Nunnemaker,* 501 U.S. 797, 801, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991) ("State procedural bars are not immortal.... If the last state court to be presented with a particular federal claim reaches the merits, it removes any bar to federal court review that might otherwise have been available."). The resolution of this question is important because "[i]t concerns the respect that federal courts owe the States and the States' procedural rules when reviewing the claims of state prisoners in federal *habeas corpus.*" *Coleman v. Thompson,* 501 U.S. 722, 726, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

The Fourth Circuit recently addressed this very issue in the context of an ambiguous state court order. The Fourth Circuit reviewed the precedent for determining when a state procedural bar should prevent federal *habeas* review:

> *Harris* addressed this problem by developing a presumption that "a procedural default does not bar consideration of a federal claim on either direct or *habeas* review unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." The presumption developed in *Harris,* however, does not apply unless "it fairly appears that a state court judgment rested primarily on federal law or was interwoven with federal law, that is, in

those cases where a federal court has good reason to question whether there is an independent and adequate state ground for the decision." Therefore, only when the decision of the state court fairly appears to be grounded in federal law must "federal *habeas* courts ... conclusively presume that a state decision does not rest on an independent and adequate state ground, unless the state court's opinion contains a plain statement that [its] decision rests upon adequate and independent state grounds."

*Wilson v. Moore,* 178 F.3d 266, 273 (4th Cir.1999) (quoting *Harris,* 489 U.S. at 263, 109 S.Ct. 1038; *Coleman,* 501 U.S. at 739, 111 S.Ct. 2546; *Smith v. Dixon,* 14 F.3d 956, 962 (4th Cir.1994) (en banc)). In order to determine whether the *Harris* presumption applies, it becomes necessary to determine whether the state court's decision "fairly appears to be grounded in federal law." *Id.*

The Fourth Circuit then announced principles for determining when an unexplained state court decision may fairly be considered as grounded in federal law:

> The rub comes in attempting to decipher the basis for an unexplained state order, i.e., in deciding whether a state court's summary disposition—like the one-sentence denial at issue here—"fairly appears" to rest on federal law or on an adequate and independent state ground. Fortunately, there are some general guideposts to direct our inquiry. First, federal *habeas* courts should simply look to the text of the state court's order for clues, in particular whether the state order mentions federal law. Also, the language used by the state court in disposing of the claim may suggest a basis for the order. Second, fed-

**5.** After Riley's appellate counsel filed an *Anders* brief, the state appellate court ordered briefing on the double jeopardy and conflict issues. Riley's counsel briefed these issues. In addition, Riley submitted a supplemental brief that also presented the unlawful arrest and subject matter jurisdiction issues. Therefore, these issues were presented to the state appellate court. The court, however, neglected to mention these issues in its opinion. The court did cite to S.C.Code § 14–8–250 and Rule 220(b) of the South Carolina Rules of Appellate Procedure, both of which state that the appellate court "need not address a point which is manifestly without merit."

eral *habeas* courts should consider the circumstances surrounding the entry of the state order. For example, the federal *habeas* court's decision might be informed by examining whether the claims presented to the state court were subject to summary denial on procedural grounds under state law, or whether the state court refused to conduct an evidentiary hearing.

*Wilson,* 178 F.3d at 273–74 (citing *Ylst,* 501 U.S. at 802, 111 S.Ct. 2590; *Coleman,* 501 U.S. at 740, 111 S.Ct. 2546; *Skipper v. French,* 130 F.3d 603, 611 (4th Cir.1997); *Smith,* 14 F.3d at 963–69).

The first factor is the text of the state opinion. The text of the opinion of the South Carolina Court of Appeals affirms the conviction without mentioning Riley's unlawful arrest and subject matter jurisdiction claims. "[T]he failure to mention federal law supports the conclusion that the state order 'fairly appears' to rest on state law, even though the state order does not refer expressly to state law." *Id.* at 274 (citing *Coleman,* 501 U.S. at 738, 111 S.Ct. 2546 ("It is not necessarily the case that state courts will take pains to provide a clear and express statement of procedural default in all cases.")). Moreover, "the lack of any mention of federal law is a significant indication that the state order does not rest on federal law." *Id.*

The court finds that the first factor favors the conclusion that the state appellate court's rejection of the unlawful arrest and subject matter jurisdiction claims was not grounded in federal law. These two claims are not mentioned in the opinion. Hence, there is no mention of federal law in conjunction with these claims. Applying the precedent above, the failure to mention federal law supports the conclusion that the rejection of the claims was not grounded in federal law. In addition, the court stated that it was generally relying upon S.C.Code § 14–8–250 and Rule 220(b) of the South Carolina Rules of Appellate Procedure, both of which state that the appellate court "need not address a point which is manifestly without merit." Thus, the

decision appears to be grounded in state law.

The second factor is the circumstances surrounding the entry of the order, such as whether the claims were subject to summary denial on state procedural grounds. As discussed above, the claims were subject to summary denial because they were not preserved for appellate review. This fact, especially when viewed in light of the failure to mention federal law, mandates the conclusion that the state court's decision was not grounded in federal law. Accordingly, the *Harris* presumption does not apply, and the court rules that the claims are procedurally defaulted.

■■■ The procedural bar may only be lifted if Riley can "demonstrate cause for the default and prejudice resulting therefrom or demonstrate that a failure to consider the claims will result in a fundamental miscarriage of justice." *Weeks,* 176 F.3d at 269. "The existence of cause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel. And, in order to demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack, a movant must show actual innocence by clear and convincing evidence." *United States v. Mikalajunas,* 186 F.3d 490, 493 (4th Cir.1999). Because Riley fails to demonstrate cause and prejudice or a miscarriage of justice, his claims are procedurally defaulted.

### b. Merits

#### i. Third Ground—Unlawful Arrest

■■■ Even if not procedurally barred, the third and fourth grounds of Riley's petition have no merit. The third ground of Riley's petition is that his arrest was in violation of the Fourth Amendment. He bases this claim upon an alleged finding in a state preliminary hearing that his arrest was unlawful. *See* (Pet.'s Obj.Ex. L, at 68–73.) Riley, however, points to nothing

in the transcript of this hearing which would establish that his arrest was unlawful. Although the transcript does reflect that a state magistrate dismissed the assault charge against Riley, the magistrate never stated the reasons for the dismissal, and the charges were later reinstated by the trial judge. The bare fact that the charge was initially dismissed by the magistrate does not support the inference that Riley's arrest was in violation of the Fourth Amendment. Without more than an unsupported inference, Riley cannot prevail on the third ground of his section 2254 petition.

### ii. Fourth Ground—Subject Matter Jurisdiction

Under the fourth ground, Riley contends that he was sentenced under an indictment that was amended the day of trial and that his right to be tried on an indictment returned by a grand jury was therefore violated. This violation, he argues, resulted in a lack of subject matter jurisdiction. This argument is without merit because Riley is mistaken regarding the facts. Riley contends that he was indicted for the *purchase* of crack cocaine but that the jury found him guilty of the *distribution* of crack cocaine. Riley is incorrect. He was both indicted and convicted for the purchase of crack cocaine, and there is no evidence to the contrary. Riley's argument appears to be based upon the fact that section 375(B) outlaws both the distribution and purchase of crack cocaine. This fact is of no consequence. Therefore, Riley's fourth ground is without merit.

### III. CONCLUSION

Riley cannot prevail on any of the four grounds of his petition.

Accordingly, it is

**ORDERED** that the respondents' motion for summary judgment is **GRANTED** and that Riley's petition is **DISMISSED.** It is further

**ORDERED** that Riley's "motion to be release[d] on personal recognizance" is **DENIED.**

**IT IS SO ORDERED.**

## NOTICE OF RIGHT TO APPEAL

The petitioner is hereby notified that he has the right to appeal this order within thirty days from the date hereof, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.