**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 20-4420**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

SOTERIO LAMAR HOPE,

Defendant - Appellant.

Appeal from the United States District Court for the District of South Carolina, at Rock Hill.  Mary G. Lewis, District Judge.  (0:19-cr-00261-MGL-1)

Argued:  October 29, 2021                    Decided:  March 9, 2022

Before GREGORY, Chief Judge, WYNN, and THACKER, Circuit Judges.

Vacated and remanded by published opinion.  Chief Judge Gregory wrote the opinion, in which Judge Wynn joined.  Judge Thacker wrote a dissenting opinion.

**ARGUED:**  Paresh S. Patel, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Greenbelt, Maryland, for Appellant.  Thomas Ernest Booth, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.  **ON BRIEF:**  Jill E.M. HaLevi, MEDIATION & LEGAL SERVICES, LLC, Charleston, South Carolina, for Appellant. Nicholas L. McQuaid, Acting Assistant Attorney General, Robert A. Zink, Acting Deputy Assistant Attorney General, Criminal Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; M. Rhett DeHart, Acting United States Attorney, Kathleen M. Stoughton, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.

GREGORY, Chief Judge:

Hope pled guilty to one count of knowingly possessing a firearm and ammunition. J.A. 36. During sentencing, the United States Probation Office completed a presentence report ("PSR") determining that Hope qualified for a mandatory minimum sentence under the Armed Career Criminal Act ("ACCA"), based on three prior South Carolina convictions, dated May 22, 2013, for possession of marijuana with intent to distribute in proximity of a school. J.A. 152. Hope objected, arguing that his prior South Carolina convictions were not predicate offenses under the ACCA. J.A. 159–60. The district court overruled Hope's objection and imposed a minimum sentence of 15-years' incarceration, followed by three years of supervised release. J.A. 101–03, 113. Hope now appeals.

We hold that the district court erred in finding that Hope's prior state convictions qualified as "serious drug offenses" under the ACCA, and, thus, we vacate and remand for resentencing.

I.

On February 1, 2018, Soterio Lamar Hope was named in a one-count superseding indictment in the United States District Court in South Carolina charging him with knowingly possessing a firearm and ammunition, all of which had been shipped and transported in interstate and foreign commerce, having previously been convicted of a felony, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2) and 924(e) (Count One). J.A. 36, 143. On November 19, 2019, Hope pled guilty to Count One of the Superseding Indictment. J.A. 6, 68. On February 11, 2020, the United States Probation Office

2

completed a PSR, which was subsequently revised on March 23, 2020. J.A. 142. The PSR noted that Hope qualified for a mandatory minimum of 15-years' incarceration under the ACCA, based on three prior South Carolina convictions dated May 22, 2013. J.A. 152; PSR ¶ 40. This determination resulted in an offense level of 33. J.A. 152. After receiving credit for acceptance of responsibility, Hope's total offense level was 30, which would have resulted in a sentencing guideline range of 135–168 months. J.A. 152; PSR ¶ 55.

During his sentencing hearing on August 12, 2020, Hope objected to the application of the ACCA by arguing that his prior South Carolina convictions were not predicate offenses under the ACCA. J.A. 159–60. The district court overruled Hope's objections and imposed a mandatory minimum sentence under the ACCA of 180-months' incarceration. J.A. 154, 101–03, 113. Final judgment was entered on August 13, 2020. On August 17, 2020, Hope filed a timely notice of appeal to this court.

## II.

As an initial matter, there is a question of whether we review *de novo* or for plain error. Generally, we review *de novo* whether a prior conviction qualifies as a "serious drug offense" under the ACCA because it is a question of law. *United States v. Burns-Johnson*, 864 F.3d 313, 315 (4th Cir. 2017). Additionally, we review *de novo* a trial court's legal interpretation of the United States Sentencing Guidelines. *United States v. Wessells*, 936 F.2d 165, 168 (4th Cir. 1991).

Here, the Government alleges that Hope did not object during sentencing to the determination that his predicate offenses qualified as a "serious drug offense" under the

3

ACCA. Resp. Br. at 6–8. Thus, the Government argues that Hope forfeited his ACCA claim and that we are limited to plain error review because Hope's argument on appeal is "different from his claim in the district court." Resp. Br. at 6–8. While it is true that claims not raised at the district court are forfeited and thus, limit appellate review to plain error, this is not the case here. *See, e.g.*, *United States v. White*, 836 F.3d 437, 444 (4th Cir. 2016) (holding that if the defendant did not object at trial, he has forfeited his claim on appeal, and the reviewing court is limited to plain error); *United States v. Chong Lam*, 677 F.3d 190, 200 (4th Cir. 2012) (same); *United States v. Olano*, 113 S. Ct. 1770, 1776, (1993) (holding that courts may review a forfeited claim for plain error).

We review *de novo* because Hope properly and timely objected at sentencing that his prior South Carolina convictions were not serious drug offenses as a matter of law under the ACCA. J.A. 101, 159–60.[1] Thus, Hope did not forfeit his claim. *See Olano*, 113 S.

---

[1] Hope objected to the PSR by arguing that:

[H]is South Carolina convictions for Distribute, sell, manufacture, or possession with intent to distribute a controlled substance statute *should not qualify as predicate convictions for purpose of the Armed Career Criminal Act*. Counsel is aware of *United States v. Marshall*, which ruled that S.C. Code section 44-53-445 is a divisible statute and that under the modified categorical approach, possession with intent to distribute marijuana in the proximity of a school counts as a predicate conviction for purposes of the ACCA. 747 F. App'x 139.

However, Mr. Hope pled to a duplicitous indictment in state court. This creates a due process concern because his state court indictment charged him with multiple offenses in a single count. As a result, Mr. Hope was not put on notice of the charge against him and this creates a constitutional infirmity. Counsel acknowledges the Fourth Circuit's decision in *United States v.*
(Continued)

4

Ct. at 1777 (1993) (clarifying that "forfeiture [is] the failure to make the timely assertion of a right"). Though the dissent argues that Hope "never argued — either in written objections to the PSR or at sentencing" that his state convictions were not serious drug offenses under the ACCA, *see* Dissenting Op. at 35, we find that during sentencing and in his PSR, Hope's counsel argued that the South Carolina statute was divisible and that though the Fourth Circuit previously held that it was a categorical match, this was no longer true because Congress decriminalized hemp in 2018. Though we understand this could be a close question and recognize that counsel could have provided a better analysis to guide the district court, Hope specifically objected to the application of the ACCA on the grounds that there was no categorical match with his previous state convictions. The district court understood Hope's objection and overruled it.[2]

---

*Furlow*, which concluded that the duplicitous argument raised by Furlow was a matter for the South Carolina state courts. 928 F.3d 311, fn.15.

J.A. 159 (emphasis added).

[2] At sentencing, Hope's counsel stated: "I believe on— the *Marshall* Court forecloses my analysis because the Fourth Circuit have really not published a persuasive opinion that 445 *is divisible modified category approach that applies* (sic)." J.A. 101 (emphasis added); Sentencing Tr. 11:10–14. The district court agreed, *see* Sentencing Tr. 11:15, and overruled Hope's objection. Counsel then moved on to discuss the second objection under the duplicitous indictment theory, but also said this objection was foreclosed:

> [S]o I think my position's (*sic*) for opposing that, but I made a duplicitous indictment argument. Basically, what I looked at Mr. Hope's predicate convictions under the guidelines, which is the proximity statute, 445. If you look at the statute, it list—if you look at the indictment, it lists different elements since it was a divisible statute in one count, Your Honor, but in light of a furlough petition, which basically when Supreme Court reviewed the

(Continued)

5

Still, the Government would have us believe that Hope's objection was *solely* based on a duplicitous indictment theory. While it is true that counsel also raised an objection based on the duplicitous indictment theory, counsel first objected on the basis that Hope's South Carolina offenses did not qualify as predicate offenses under the ACCA and cited to *United States v. Marshall*, 747 F. App'x 139 (4th Cir. 2018), *cert. denied*, 139 S. Ct. 1214 (2019), a case dealing with the same objection and same South Carolina offense at issue here.[3] We have clarified that for purposes of *de novo* appellate review, it is sufficient for counsel to articulate an objection based on multiple theories. *See Yee v. City of Escondido, Cal.*, 112 S. Ct. 1522, 1532 (1992) ("Once a federal claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below."); *United States v. Robinson*, 744 F.3d 293, 300 (4th Cir. 2014) (holding that although a petitioner did not make the same "precise" argument before the district court, as he did on appeal, he did "challenge criminal history score, and thus

*Curtis* decision, which basically held that in cases where somebody is enhanced in the Armed Career Criminal Act that prior convictions in state court cannot be attacked. So, Your Honor, I believe I'm foreclosed on Supreme Court precedent in light of that. But I just wanted to raise those out of an abundance of caution in case there was something that could have benefited Mr. Hope on Supreme Court review.

J.A. 101–02; Sentencing Tr. 11:16–12:12.

[3] We also note that the Government's response brief admits that the district court specifically responded to Hope's ACCA objection which indicates that the district court understood Hope's claim. *See* Resp. Br. at 15 (stating that "[u]nder the modified categorical approach, the district court properly concluded that Hope was convicted of three § 445 marijuana offenses").

preserved his claim").[4]  Though Hope now adds more weight to his argument on appeal, the district court had an opportunity to evaluate his specific objection that his state convictions were not predicate offenses for the ACCA enhancement.  *See* J.A. 101–02. Moreover, this is not a situation where Hope made an argument that was "too general to alert the district court to the specific [objection]."  *See United States v. Bennett*, 698 F.3d 194, 199 (4th Cir. 2012) (applying plain error review because defendant's objection below was "far to general to alert the district court" of the argument that he later raised on appeal.). Hope is neither raising a new claim nor a new theory.  Rather, Hope is adding a finer point to his objection raised below.  *See Robinson*, 744 F.3d at 300 n.6 (finding that petitioner's claim challenging his sentencing guidelines criminal history score was preserved in district court even though he made a new argument against that score on appeal).

Even if we found that plain error review is appropriate here, the outcome would be the same as we would correct the district court's error.  *See* Section III.E. at 32–34. Recently, in a similar case, we clarified that we may first examine the merits of the appeal and need not decide whether plain error or *de novo* review apply if the outcome would be

---

[4] In *Robinson*, we held that the appellant's claim challenging his sentencing guidelines criminal history score was preserved in district court even though he made a new argument against that score on appeal.  Robinson's PSR recommended a two-point increase in his score because he was on probation for a marijuana possession conviction at the time he committed his instant federal drug conspiracy offense.  In district court, Robinson objected to the two-point increase because he was only on probation for one day. But on appeal, he argued that any increase in points for the marijuana possession was erroneous because it was relevant conduct for his instant conspiracy offense.  Despite these different arguments, we found that plain error review did not apply because the arguments were variants of the same claim challenging Robinson's criminal history score.  *Id*. at 296– 98, 300 n.6.

the same. *See United States v. Green*, 996 F.3d 176, 184 (4th Cir. 2021) (deciding the case first on the merits and then holding that, "even if plain error review is appropriate – and not our ordinary *de novo* review of a 'crime of violence' determination[,] . . . we would correct the district court's error here and vacate and remand for resentencing"). Still, in comparison to *Green*, our instant case is a better candidate for *de novo* review because Hope sufficiently raised an objection below to a "reasonable degree of specificity which […] adequately apprised the trial court of the true basis of his objection." *United States v. LeBlanc*, 612 F.2d 1012, 1014 (6th Cir. 1980) (internal quotes and citation omitted); *see also* Fed. R. Crim. P. 51(b). In *Green*, for example, the petitioner's objection to the career offender enhancement consisted of "one sentence and two footnotes." *Id.* at 178. Here, we need not "parse what may be a fine line between a new 'claim' or 'objection,' on the one hand, and a new 'twist' on a preserved claim." *Id.* (first quoting *In re Under Seal*, 749 F.3d 276, 287 (4th Cir. 2014); and then quoting *United States v. Billups*, 536 F.3d 574, 578 (7th Cir. 2008)). Hope raised more than a one-sentence objection because his counsel objected to the PSR and at sentencing that there was not a categorical match between his South Carolina offenses and the ACCA and additionally raised the duplicitous indictment objection, for the stated purpose of preserving appellate review. J.A. 101–02 ("I just wanted to raise those [objections] out of an abundance of caution in case there was something that could have benefited Mr. Hope on Supreme Court review.").

III.

A.

The categorical approach requires us to set aside the particulars of Hope's actions underlying his convictions and, "focus [] instead on 'the fact of conviction and the statutory definition of the prior offense.'" *United States v. Dozier*, 848 F.3d 180, 183 (4th Cir. 2017) (quoting *United States v. Cabrera-Umanzor*, 728 F.3d 347, 350 (4th Cir. 2013)). Then, we compare the elements of the state offense with the criteria that the ACCA uses to define "a serious drug offense." *See Shular v. United States*, 140 S. Ct. 779, 780 (2020) (asking "whether the conviction meets [the relevant] criterion"). "The point of the categorical inquiry is not to determine whether the defendant's conduct *could* support a conviction for a [predicate offense], but to determine whether the defendant was *in fact convicted* of a crime that qualifies as a [predicate offense]." *Id.* (internal citation omitted); *see also Cabrera–Umanzor*, 728 F.3d at 350.

This approach is altered for "divisible" statutes which "list elements in the alternative [] and thereby define multiple crimes." *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016). As noted by the dissent, to determine whether a statute is divisible and constitutes separate crimes we may also "consult 'external sources' like jury instructions and charging documents." Dissenting Op. at 39 (citing *United States v. Al-Muwwakkil*, 983 F.3d 748, 755–56 (4th Cir. 2020)). If the statute is divisible, then we apply the modified categorical approach which requires us to consult "a limited class of documents"— otherwise known as *Shepard* documents— "to determine what crime, with what elements,

a defendant was convicted of." *Id.* (citing *Shepard v. United States*, 125 S. Ct. 1254, 1257–58 (2005)).

The Supreme Court has cautioned that the modified categorical approach "serves a limited function" and that *Shepard* documents may be consulted only where the statute, by "listing potential offense elements in the alternative, renders opaque which element played a part in the defendant's conviction." *Descamps v. United States*, 133 S. Ct. 2276, 2283 (2013). "Where the statute defines the offense broadly rather than alternatively, the statute is not divisible, and the modified categorical approach simply 'has no role to play.'" *Cabrera–Umanzor*, 728 F.3d at 350 (quoting *Descamps*, 133 S. Ct. at 2285). That is, "[g]eneral divisibility . . . is not enough" to warrant the application of the modified categorical approach. *Id.* at 352. Rather, a statute is divisible "only if at least one of the categories into which the statute may be divided constitutes, *by its elements*, a separate offense." *Id.* (citations omitted).

After interpreting the statute and identifying the elements of the predicate offenses, we consider whether the prior state convictions "qualif[y] as . . . predicate[s]," which is so "only if [each] statute's elements are the same as, or narrower than, those of [the relevant federal definition]." *Descamps*, 133 S. Ct. at 2281. If on the other hand, the elements of Hope's prior state offenses "cover a greater swath of conduct than the elements of the relevant offense," those "crime[s] cannot qualify" as predicates under the ACCA. *Mathis*, 136 S. Ct. at 2251. In other words, if the least culpable conduct falls within the ACCA's definition of "a serious drug offense," then the statute categorically qualifies as a serious

drug offense.  But if the least culpable conduct falls outside that definition, then the statute is too broad to qualify.

B.

We begin with the ACCA, which, in relevant part, provides:

> In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or *a serious drug offense*, or both, *committed on occasions different from one another*, such person shall be fined under this title and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g).

18 U.S.C. § 924(e)(1) (emphasis added).  The ACCA then defines "a serious drug offense" as:

> (i) an offense under the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or chapter 705 of title 46 for which a maximum term of imprisonment of ten years or more is prescribed by law; or
>
> (ii) an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law;

18 U.S.C. § 924(e)(2)(A).  The Controlled Substances Act defines a "controlled substance" as "a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of part B of this subchapter."  21 U.S.C. § 802(6).  At issue here is cannabis or "marihuana," which is a Schedule I drug and defined as:

> *all parts of the plant Cannabis sativa L.*, whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound,

11

manufacture, salt, derivative, mixture, or preparation of such plant, its seeds or resin.

21 U.S.C. § 802(16)(A) (emphasis added). Of note, the 2018 Farm Bill removed hemp from the federal schedule of controlled substances. *See* Agriculture Improvement Act of 2018, Pub. L. 115-334, Title XII, § 12619(a), 132 Stat. 5018 (Dec. 20, 2018) ("the 2018 Farm Bill"). Thus, as of December 20, 2018, "marihuana" *did not include:*

(i) hemp, as defined in section 1639o of Title 7; or

(ii) the mature stalks of such plant, fiber produced from such stalks, oil or cake made from the seeds of such plant, any other compound, manufacture, salt, derivative, mixture, or preparation of such mature stalks (except the resin extracted therefrom), fiber, oil, or cake, or the sterilized seed of such plant which is incapable of germination.

21 U.S.C. § 802(16)(B). Consequently, hemp was defined as:

*the plant Cannabis sativa L.* and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, *with a delta-9 tetrahydrocannabinol* ["THC"] *concentration of not more than 0.3 percent on a dry weight basis.*

7 U.S.C. § 1639o(1) (emphasis added); Pub. L. 115-334, Title X, § 10113 (adding 7 U.S.C. § 1639o). Thus, after the 2018 Farm Bill, not all "marijuana" qualifies as a Schedule I drug under federal law because marijuana is a Schedule I drug only if the plant or any part of the plant has more than 0.3 percent THC. Accordingly, a cannabis/marijuana plant with less than 0.3 percent THC is not a Schedule I controlled substance because it is "hemp."

C.

Next, we examine the South Carolina statute. On May 22, 2013, Hope pled guilty to three violations of South Carolina Code § 44-53-445 ("Section 445"), for offenses that occurred in 2010, 2012, and 2013. *See* J.A. 146 at ¶ 17; J.A. 147 at ¶ 18; J.A. 148 at ¶ 19;

12

J.A. 149 at ¶ 20. Though not at issue here, Hope was also convicted of Distribution of Marijuana under § 44-53-370 ("Section 370").[5]

Section 445 penalizes distribution of a controlled substance within a certain proximity of a school, providing, in relevant part, that:

> It is a separate criminal offense for a person to distribute, sell, purchase, manufacture, or to unlawfully possess with intent to distribute, *a controlled substance* while in, on, or within a one-half mile radius of the grounds of a public or private elementary, middle, or secondary school; a public playground or park; a public vocational or trade school or technical educational center; or a public or private college or university.

S.C. Code § 44-53-445(A) (emphasis added). To prove that Hope committed an offense under § 445, South Carolina had to establish the following: "(1) the defendant had actual control, or the right to exercise control over the [marijuana]; (2) he knowingly distributed or delivered the [marijuana]; (3) *the substance upon analysis was, in fact, [marijuana]*; and (4) the distribution occurred within a one-half mile radius of the grounds of an elementary, middle, secondary or vocational school; public playground or park; or college or university." *Brown v. State*, 540 S.E.2d 846, 849 (2001) (emphasis added), *overruled on other grounds by State v. Gentry*, 610 S.E.2d 494 (2005) (holding that indictments' failure to allege the element of "absence from the scene of the crime" deprived the trial court of subject matter jurisdiction to hear accessory before the fact charges was not preserved for review on appeal); *see also State v. Watts*, 467 S.E.2d 272, 278 (S.C. Ct. App. Feb. 5,

---

[5] The Probation Officer used Hope's convictions under § 370 for purposes of qualifying as a "controlled substance" offense pursuant to U.S.S.G. § 2K2.1(a)(2). The use of Hope's § 370 offenses as predicate offences is not on appeal.

1996).  Hope does not contest that South Carolina met its burden to convict him under § 445 in 2013.

At issue here, however, is whether South Carolina's definition of "a controlled substance," matches the federal definition of "a serious drug offense" under the ACCA.  At the time of his conviction, South Carolina defined "a controlled substance" as a "drug, substance, or immediate precursor in Schedules I through V in Sections 44-53-190, 44-53-210, 44-53-230, 44-53-250, and 44-53-270."  S.C. Code Ann. § 44-53-110(6).  Moreover, South Carolina included marijuana as a Schedule I controlled substance, *see* § 44-53-190(D)(11), and defined "marijuana" as:

(i) *all species or variety of the marijuana plant* and all parts thereof whether growing or not;
(ii) the seeds of the marijuana plant;
(iii) the resin extracted from any part of the marijuana plant; or
(iv) every compound, manufacture, salt, derivative, mixture, or preparation of the marijuana plant, marijuana seeds, or marijuana resin.

S.C. Code Ann. § 44-53-110(27)(a) (emphasis added).  South Carolina also defined "marijuana" as not including the mature stalks of the plant (or its derivatives), oil from the plant, and some authorized uses.  *See* S.C. Code Ann. § 44-53-110 (27)(b).  Thus, at the time of Hope's state convictions in May 2013, South Carolina defined marijuana as "*all* species or variety of the marijuana plant*" and did not exempt hemp or differentiate marijuana by its THC levels.[6]

---

[6] In 2014, after Hope's predicate convictions but before his federal conviction for felon in possession of a firearm, South Carolina allowed the legal use of "industrial hemp" which it defined as "all parts and varieties of the plant cannabis sativa, cultivated or possessed by a licensed grower, whether growing or not, that contain of no more (Continued)

14

D.

Hope argues that the "controlled substance" element of his South Carolina offense, under § 445, is broader than the federal definition of "controlled substance" because, after the 2018 Farm Bill and at the time of his federal sentencing, Congress did not define marijuana plants or its parts with less than 0.3 percent THC as marijuana, whereas South Carolina did. *See* Opening Br. at 9; *see also* 21 U.S.C.A. § 802(16)(B) (defining "hemp" as cannabis with less than 0.3 percent THC, which is not a controlled substance). Second, Hope argues that we should not use the modified approach because § 445 is indivisible as to drug type. *See* Opening Br. at 14. We agree.

Since, at the time of Hope's state convictions, South Carolina defined marijuana as "*all* species or variety of the marijuana plant," and did not exempt hemp or differentiate marijuana by its THC levels, *see* S.C. Code Ann. § 44-53-110(27)(a) (2013), and because at the time of his federal conviction, Congress defined marijuana as not including hemp, we hold that the South Carolina statute is broader than the federal definition. Thus, we hold that the district court erred in finding that Hope's state offenses qualified as predicate offenses for the ACCA enhancement.

1.

As an initial matter, we have already held that § 445 is divisible as to drug conduct. *See Marshall*, 747 F. App'x at 149 (considering whether defendant's South Carolina

---

tetrahydrocannabinol concentration than adopted by federal law in the Controlled Substances Act, 21 U.S.C. 801, et seq." S.C. Code § 46-55-10(2) (2014).

predicate offenses under §§ 370[7] and 445 qualified for purposes of the ACCA and referencing *United States v. Rodriguez-Negrete*, 772 F.3d 221, 226–27 (5th Cir. 2014), which held that Section 370 is divisible); *see also Collins v. Pond Creek Mining Co.*, 468 F.3d 213, 219 (4th Cir. 2006) (explaining that our unpublished decisions are "entitled . . . to the weight they generate by the persuasiveness of their reasoning") (internal quotation marks omitted).

In *Marshall*, the defendant was charged with three felonies:  (1) possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841; (2) possession of a firearm in connection with a drug trafficking crime, in violation of 18 U.S.C. § 924(c); and (3) being a felon in possession of ammunition, in violation of 18 U.S.C. § 922(g).  747 F. App'x at 140–41.  Marshall was previously convicted in South Carolina of three counts of § 445, and of one count of § 370.  *Id.* at 149.  At sentencing, the district court determined that Marshall's three § 445 predicate offenses qualified under the ACCA.  *Id.* at 142.

Like Hope does here, Marshall at sentencing also argued that his predicate offenses did not qualify for purposes of the ACCA because §§ 370 and 445 were broader than the federal offense.  747 F. App'x at 149.  Marshall also argued that the modified categorical approach did not apply.  *Id.*  In an unpublished opinion, Judge Keenan wrote for the majority, holding that although the South Carolina statutes "govern a broader range of

---

[7] Section 370 makes it a crime "to manufacture, distribute, dispense, deliver, purchase, aid, abet, attempt, or conspire to manufacture, distribute, dispense, deliver, or purchase, or possess with the intent to manufacture, distribute, dispense, deliver, or purchase a controlled substance or a controlled substance analogue."  S.C. Code Ann. § 44-53-370(a)(1).

16

conduct than the ACCA or the career offender guideline by prohibiting the mere 'purchase'

of narcotics," the statutes are divisible and subject to the modified categorical approach

because the statutes set forth "alternative elements constituting separate crimes." *Marshall*,

747 F. App'x at 149–50 (citing *Cabrera-Umanzor*, 728 F.3d at 352). In making its

determination, the *Marshall* court considered "how South Carolina prosecutors charge the

offenses, the elements on which South Carolina juries are instructed, and the manner in

which South Carolina courts treat convictions under these statutes." *Id.* at 150 (citing

*Descamps*, 133 S. Ct. at 2290 (stating that "[a] prosecutor charging a violation of a divisible

statute must generally select the relevant element from its list of alternatives," and the jury

must find that element unanimously and beyond a reasonable doubt)).[8]

---

[8] The *Marshall* court first considered that South Carolina courts "treat the purchase of a controlled substance as a crime distinct from possession with intent to distribute under § 370. 747 F. App'x at 150 (citing *State v. Watson*, No. 2013-UP-312, 2013 WL 8538756, at *2 (S.C. Ct. App. July 3, 2013) (upholding the indictment and jury form listing purchase and possession with intent to distribute separately)). Second, *Marshall* noted that South Carolina "charge[d] one of the listed statutory alternatives in state court indictments." *Id.* (citing *Carter v. State*, 495 S.E.2d 773, 776–77 (S.C. 1998), which stated that the indictment is captioned "Manufacturing Methamphetamine 44-53-370," and that "the plain language of the body of the indictment clearly notifies [the defendant] that he is charged with manufacturing methamphetamine"). Finally, the *Marshall* court noted that "South Carolina juries typically are instructed to find one of the alternative elements listed in the statute beyond a reasonable doubt." *Id.* (citing *State v. Gill*, 584 S.E.2d 432 (S.C. Ct. App. June 23, 2003), which listed the elements for "distribution of crack cocaine"). Thus, *Marshall* concluded that "§§ 44-53-370 and 445 set forth alternative elements (for drug conduct), and [], therefore, the statutes are subject to review under the modified categorical approach." *Id.* Then, *Marshall* applied the modified categorical approach and found that "the South Carolina offense of possession with intent to distribute also matches the definition of a "controlled substance offense" under the career offender guideline." *Id.* at 151. Thus, possession, distribution, manufacture, and possession with intent to distribute a controlled substance are alternative elements that correspond to separate crimes under § 445.

17

Following *Marshall*, we have maintained that §§ 445 and 370 are divisible as to drug conduct. *See, e.g.*, *United States v. Coker*, 794 F. App'x 341 (4th Cir. 2020) (per curiam), *cert. denied*, 141 S. Ct. 175 (2020) (holding that South Carolina Code § 44-53-375 and § 445 are subject to the modified categorical approach); *United States v. Furlow*, 928 F.3d 311, 320–22 (4th Cir. 2019) (holding that § 375(B) (2018), which punishes various methamphetamine and crack cocaine offenses, is divisible and subject to the modified categorical approach), *vacated and remanded on other grounds by Furlow v. United States*, 140 S. Ct. 2824, (2020) (remanding in light of *Rehaif v. United States*, 139 S. Ct. 2191 (2019));[9] *see also Riley v. South Carolina*, 82 F. Supp. 2d 474, 478 (D.S.C. 2000) (holding that a conviction for §§ 375(B) and 445(B)(3) did not violate double jeopardy because they are not the same offense as the intent of the South Carolina legislature was for § 445 to impose cumulative penalties on top of § 375).

We note two critical distinctions between *Marshall* and the case at bar. First, in *Marshall*, the defendant was sentenced *before* the 2018 Farm Bill was signed into law and thus, the *Marshall* court used the same modified categorical analysis we do here but found that there was a match.

---

[9] Unlike § 445, which only lists "controlled substance," § 44-53-375(B) provides that any person "who manufactures, distributes, dispenses, delivers, purchases, or otherwise aids, abets, attempts, or conspires to manufacture, distribute, dispense, deliver, or purchase, or possess with intent to distribute, dispense, or deliver methamphetamine or cocaine base" is guilty of a felony. *See also United States v. Cheeseboro*, 757 F. App'x 224, 227 (4th Cir. 2018) (holding that § 375(b) is divisible); *United States v. Sulton*, 740 F. App'x 45, 46 (4th Cir. 2018) (same).

Second, though the instant case also involves § 445, and, thus, we affirm that it is divisible as to drug conduct, the parties disagree on whether § 445 is also divisible as to drug type—a question the *Marshall* court did not reach. *Compare* Resp. Br. at 12–15 *with* Reply Br. at 7–14. The Government notes that the South Carolina Supreme Court held that a defendant who was charged with trafficking marijuana and trafficking cocaine, under § 44-53-370(e)(1)(b), did not violate double jeopardy because marijuana was a separate element of a § 370(e) offense. *State v. Wilson*, 429 S.E.2d 453, 454 (S.C. 1993), *abrogated on other grounds by State v. Easler*, 489 S.E.2d 617 (S.C. 1997). *But see*, *United States v. Barcenas-Yanez*, 826 F.3d 752, 757 (4th Cir. 2015) (clarifying that "[o]nly when the law requires that in order to convict the defendant the jury must unanimously agree that he committed a particular substantive offense contained within the disjunctively worded statute are we able to conclude that the statute contains alternative *elements* and not alternative *means*"). Moreover, the Government argues that though the majority in *Marshall* primarily examined the elements for § 370, the court noted that the only difference between §§ 370 and 445 was that § 445 "adds the additional element of engaging in a drug offense within a certain proximity of a school or public park." *See Marshall*, 747 F. App'x at 149. Thus, the Government argues that "[i]t would be illogical to hold that drug substance is only a means under Section 445 even though Section 370 and 445 are both divisible by conduct, and [] drug substance is an element of Section 370." Resp. Br. at 14. The dissent also agrees with the Government that § 445 is divisible by drug type. *See* Dissenting Op. 39–40.

19

On the other hand, Hope argues that § 445 is indivisible as to drug type "on its face," *see* Reply Br. at 7, because the statute requires that the state prove only that the defendant "distributed, sold, manufactured, *or* unlawfully possessed with intent to distribute *a 'controlled substance'* knowing he was within proximity of a school," *id.* at 8 (emphasis added).

The South Carolina Supreme Court has not clarified whether § 445 is indivisible as to drug type. On its face, and unlike drug conduct, § 445 is not divisible as to drug type because the statute penalizes the "distribut[ion], [sale], purchase, manufacture, or [the] unlawful[] possess[ion] with intent to distribute, *a controlled substance*." (emphasis added); *see Mathis*, 136 S. Ct. at 2256 (instructing that to determine divisibility, we begin by looking to the plain text of the statute to identify alternative elements or punishments); *see also United States v. Allred*, 942 F.3d 641, 649 (4th Cir. 2019) (same)  The plain language suggests that while a defendant may be charged for various drug conduct, the government need only prove that there was "a controlled substance" involved in the offense. *See Schad v. Arizona*, 111 S. Ct. 2491, 2506 (1991) (Scalia, J., concurring with plurality that "it has long been the general rule that when a single crime can be committed in various ways, jurors need not agree upon the mode of commission."). Thus, while the drug conduct (i.e., distribution, sale, purchase, manufacturing, or possession with intent to distribute) portion of the generic § 445 offense is divisible, the remaining portion of the

20

§ 445 is not because the two remaining elements, i.e., controlled substance and proximity to a school, are not further divisible.[10]

Indeed, the Supreme Court long-ago rejected a fact-approach which would "deny[] any real distinction between divisible and indivisible statutes extending further than the generic offense." *Descamps*, 111 S. Ct. at 2499.[11] The Court clarified that while lower courts may "*modify* the categorical approach to accommodate alternative 'statutory definitions,' [t]hey may not, by pretending that every fact pattern is an 'implied' statutory definition, convert that approach into its opposite." *Id.* (quoting *Aguila-Montes*, 655 F.3d at 927) (emphasis in original).

_____

[10] We note that the Supreme Court has cautioned us on the "erroneous assumption that any statutory alternatives are *ipso facto* independent elements defining independent crimes under state law, and therefore subject to the axiomatic principle that the prosecution must prove independently every element of the crime." *Schad*, 111 S. Ct. at 2499 (emphasis in original). Thus, as we do here and as the *Marshall* court did, rather than "substitute our own interpretations of state statutes," we must look to whether the state court has determined that "certain statutory alternatives are mere *means* of committing a single offense" or whether they are, indeed, alternative statutory elements. *Id.* (emphasis added). Accordingly, in situations, such as here, where the § 445 does not list statutory alternatives for "controlled substance" we must proceed with caution so as not to read alternative statutory elements, and divisibility, where they do not exist.

[11] In *Descamps*, for example, the petitioner was convicted of being a felon in possession of a firearm. *Id.* at 254. Like Hope, petitioner Descamps had three prior convictions, including for violating a California statute, § 459, for burglary which provides that a "person who enters" certain locations, even lawfully, "with intent to commit grand or petit larceny or any felony is guilty of burglary." *Id.* The district court applied the ACCA enhancement holding that Descamps' state offenses were "violent felon[ies]" under § 924(e)(2)(B). The Ninth Circuit affirmed by reasoning that because Descamps' plea colloquy rested on facts satisfying the elements of the generic burglary offense (i.e., that he entered unlawfully), his state offense was a match. *See United States v. Aguila-Montes de Oca*, 655 F.3d 915, 927 (9th Cir. 2011)). The Supreme Court overturned the Ninth Circuit's approach.

21

With respect to our case, § 445 only requires that the state prove that Hope (1) distributed, sold, purchased, manufactured, *or* unlawfully possessed with intent to distribute, (2) a controlled substance, (3) in proximity to a school. Thus, the particular facts alleged about the kind of controlled substance involved in the offense would not alter the elements required for the offense and, importantly, would not be evidence that the statute is further divisible as to drug type. *Nijhawan v. Holder*, 129 S. Ct. 2294, 2303 (2009) (modified categorical approach can be used to "determin[e] which statutory phrase (contained within a statutory provision that covers several different generic crimes) covered a prior conviction").

Nevertheless, in addition to the text, and the dissent notes, we may also consult a limited number of documents such as jury instructions and charging documents to determine whether a statute is divisible. *Mathis*, 136 S. Ct at 2249. We begin with Hope's charging documents which alleged that he "distribute[d]. . . *marijuana*, a controlled substance" in proximity to a school. J.A. 123, 138, 148. The wording of the charging document indicates that marijuana is a means to satisfy the "controlled substance" element because it may be modified to account for other facts, or drug types, involved. *See Descamps*, 113 S. Ct. at 2291 (clarifying that "every fact pattern" is not a different offense.). As the Supreme Court instructs, an indivisible statute is one that is a single crime that may "spell [] out various factual ways," or "means," "of committing some component

of the offense." *Mathis*, 136 S. Ct. at 2249.[12] While Hope's indictment could have alleged any number of drug types instead of marijuana, the key element (a controlled substance) would remain unchanged. As noted by the dissent, the South Carolina pattern jury instructions "direct the trial court to '[i]nsert the applicable controlled substance' when giving the instruction for a § 44-53-445 charge." Dissenting Op. at 40 (quoting Ralph King Anderson, Jr., Anderson's South Carolina Requests to Charge – Criminal § 4-15 n.3 (2d ed. 2012)). This further indicates that the trial court is directed to insert the factual means by which the defendant violated the "controlled substance" element of the offense. Still, we recognize that to convict a defendant under § 445, South Carolina must prove that "*the substance upon analysis was, in fact,* [the alleged controlled substance]." *Brown*, 343 S.C. at 347–48 (emphasis added), *overruled on other grounds by Gentry*, 363 S.C. 93. Because the statute only requires that the state prove that Hope possessed a "controlled substance," the *alleged specific substance* only matters to the extent that it is used to prove that it is in fact a controlled substance.

After examining the external documents, we recognize that the question of whether § 445 is divisible as to drug type could be close. Still, we find that the best reading of § 445

---

[12] In *Mathis*, 136 S. Ct. at 2249, the Supreme Court provided an example of a statute with alternative means of commission:

> [S]uppose a statute requires use of a "deadly weapon" as an element of a crime and further provides that the use of a "knife, gun, bat, or similar weapon" would all qualify. Because that kind of list merely specifies diverse means of satisfying a single element of a single crime . . . a jury need not find (or a defendant admit) any particular item: A jury could convict even if some jurors concluded that the defendant used a knife while others concluded he used a gun, so long as all agreed that the defendant used a "deadly weapon."

23

is that drug type is a *means* to commit the crime. We hinge our reading also on the fact that the South Carolina Supreme Court has clarified that juries do not need to unanimously agree on the same factual means, so long as they agree that the element of the offense is met (*e.g.*, a jury need not agree on whether Hope had marijuana or cocaine, so long as they agree that he had a "controlled substance"). *See, e.g.*, *State v. Adams*, 845 S.E.2d 217, 224 (S.C. Ct. App. May 20, 2020) (holding that "[t]here is no ambiguity in the text, which tells us flatly an element that must be proven is a 'sexual battery,' a phrase that is defined elsewhere in the state code to include alternative acts"). Also, we note that the South Carolina Supreme Court has not signaled that § 445 is divisible as to drug type which limits our interpretation of § 445. *See Najera-Rodriguez v. Barr*, 926 F.3d 343, 356 (7th Cir. 2019), *reh'g denied* (Aug. 23, 2019) (holding that "[t]o reduce th[e] risk [of incorrectly interpreting a state statute], we need to insist on clear signals—signals that convince us to a certainty that the elements are correct and support divisibility before imposing additional federal consequences for those state convictions").[13]

---

[13] Various sister circuits have held that when neither the plain language nor a state supreme court clarify whether an element of "controlled substance" is further divisible by drug type, this is, generally, a signal that it is indivisible as to drug type. *See, e.g.*, *Harbin v. Sessions*, 860 F.3d 58, 64–68 (2d Cir. 2017); *United States v. Aviles*, 938 F.3d 503, 512–14 (3d Cir. 2019); *Alejos-Perez v. Garland*, 991 F.3d 642, 652 (5th Cir. 2021) (holding that a Texas statute that criminalized possession of a substance in "Penalty Group 2-A" was not divisible); *United States v. Garcia*, 948 F.3d 789, 794 (7th Cir. 2020); *United States v. Elder*, 900 F.3d 491, 502–03 (7th Cir. 2018) (explaining that an Arizona statute that criminalized conduct related to "dangerous drugs"—a broad category that was defined elsewhere in the statutes—was not divisible by substance); *Najera-Rodriguez v. Barr*, 926 F.3d 343, 351–52 (7th Cir. 2019); *United States v. Graves*, 925 F.3d 1036, 1039–41 (9th Cir. 2019); *United States v. Cantu*, 964 F.3d 924, 928–34 (10th Cir. 2020).

After concluding that § 445 is indivisible as to drug type, we must determine whether South Carolina's definition of "a controlled substance" matches the federal definition of "controlled substance" for purposes of qualifying as "a serious drug offense" under the ACCA. Since we previously determined that § 445 is divisible as to drug conduct, then we still employ the modified categorical approach to compare the South Carolina controlled substance schedule with the federal schedule. As the government concedes, *see* Resp. Br. at 12, the federal drug schedules and South Carolina drug schedules plainly do not match. Namely, the South Carolina drug Schedule IV lists forty-five drug substances, *see* S.C. Code Ann. § 44-53-250, whereas the federal drug Schedule IV only lists eleven, *see* 21 U.S.C. § 812. Therefore, in South Carolina, the least culpable conduct required to violate § 445 would not be criminalized under the federal code. *See Shular*, 140 S. Ct. at 783 (applying the conduct-method approach to determine whether a state offense is a "serious drug offense" under the ACCA); *see also Moncrieffe v. Holder*, 133 S. Ct. 1678, 1684 (2013) (explaining that under the categorical approach a court is to look to "'the least of the acts' criminalized, and then determine whether even those acts are encompassed by the generic federal offense.") (quoting *Johnson v. United States*, 130 S. Ct. 1265, 1269 (2010))). Accordingly, and as the dissent agrees, there is no match.

2.

Though our categorical analysis could end here, we note that even if § 445 were divisible by drug type, the modified categorical approach would yield the same outcome: there is no match.

Before moving to compare the federal and state definitions of a "controlled substance," we need to clarify which definitions we are using. Here, we will compare the definition of "marijuana" under federal law at the time of Hope's sentencing, on August 12, 2020, with South Carolina's definition of "marijuana" at the time he was sentenced for his state offenses on May 22, 2013. *See United States v. Cornette*, 932 F.3d 204, 213 (4th Cir. 2019) (holding that we must determine whether, at the time of defendant's conviction "in 1976, the definition of burglary in the Georgia burglary statute criminalized more conduct than ACCA generic burglary").

We, including the dissent, disagree with the Government's contention that the status of a prior state conviction under the ACCA is determined by "the [federal] law that applied at the time of that [state] conviction," not the time of federal sentencing. Resp. Br. at 16 (citing *McNeill v. United States*, 133 S. Ct. 2218 (2011)). First, the Sentencing Guidelines require that a district court use the manual that is "in effect on the date that the defendant is sentenced," unless it would violate the Ex Post Facto Clause. *See* U.S.S.G. § 1B1.11; *see also Peugh v. United States*, 133 S. Ct. 2072, 2084 (2013) (holding that the Ex Post Facto Clause is violated when a change to the Guidelines adopted after the instant offense was committed results in an increased sentencing range). Here, the Ex Post Facto Clause does not apply. Second, the Government incorrectly relies on *McNeill*. In *McNeill*, the Supreme Court determined whether the district court should rely on a subsequent change in *state* law to determine whether a previous conviction was a serious drug offense under the ACCA. 131 S. Ct. at 2223 (holding that "[i]t cannot be correct that subsequent changes

26

in state law can erase an earlier conviction for ACCA purposes").[14]  The instant matter

concerns changes to federal law, not state law.  As our sister court has noted:

> it would be illogical to conclude that federal sentencing law attaches 'culpability and dangerousness' to an act that, at the time of sentencing, Congress has concluded is *not* culpable and dangerous.  Such a view would prevent amendments to federal criminal law from affecting federal sentencing and would hamper Congress' ability to revise federal criminal law.

*United States v. Bautista*, 989 F.3d 698, 703 (9th Cir. 2021)[15].  Thus, *McNeill* does not

prohibit us from considering changes to federal law for the purposes of the ACCA.

---

[14] In *McNeill*, the defendant was convicted of a felon unlawfully in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).  At sentencing, the district court determined that McNeill qualified for ACCA's sentencing enhancement based, in part, on six prior North Carolina drug-trafficking convictions.  At the time that McNeill committed those state crimes, they each carried a 10–year maximum sentence, which McNeill received.  However, because the State later reduced the maximum sentence for those offenses to less than 10 years, McNeill argued that none of his six prior convictions were for "serious drug offenses" within the meaning of § 924(e)(2)(A)(ii).  The district court rejected McNeill's request that it look to current state law and held that the ACCA requires courts to conduct a "backward-looking" inquiry into prior convictions, meaning that courts must "consult the law that applied at the time of th[ose] conviction[s]."  *McNeill*, 131 S. Ct. at 2222.  Both the Fourth Circuit and Supreme Court affirmed the district court.  For further examples, *see Boulanger v. United States*, 978 F.3d 24, 30 n.6 (1st Cir. 2020) ("Congress intended courts to use the 'historical statute of conviction' when analyzing ACCA cases, not a modern, amended version" (quoting *McNeill*, 131 S. Ct. at 2223)); *Rivera v. United States*, 716 F.3d 685, 688 (2d Cir. 2013) ("Whether a prior conviction qualifies as a predicate felony for the ACCA sentencing enhancement is determined by looking to state law existing at the time of that conviction.").

[15] In a similar case, the Ninth Circuit held that a defendant's prior Arizona state court conviction of attempted transportation of marijuana, under a state statute that criminalized attempted transportation of hemp as well as marijuana, was not a categorical match with generic federal offense at time of his federal sentencing for the purposes of the ACCA.  *Bautista*, 989 F.3d at 705.

3.

Accordingly, after considering whether South Carolina's 2013 definition for "marijuana" matches the February 2020 federal definition for "marijuana," we, including the dissent, hold that there is no categorical match.

As detailed above, on August 12, 2020, when Hope was sentenced for felon in possession of a firearm, Congress defined "marijuana" as "*all parts of the plant Cannabis sativa L*," *see* 21 U.S.C.A. § 802(16)(A) (emphasis added), except for "hemp," as defined in section 1639o of Title 7. 21 U.S.C. § 802(16)(B) (Effective December 21, 2018). Hemp was defined as "the plant Cannabis sativa L. . . . with a delta-9 tetrahydrocannabinol concentration *of not more than* 0.3 percent on a dry weight basis." 7 U.S.C.A. § 1639o(1) (emphasis added). In comparison, at the time of Hope's state convictions, on May 22, 2013, South Carolina defined "marijuana" as "*all species or variety of the marijuana plant and all parts thereof*," and did not carve out any exemption for "hemp" until 2014. S.C. Code Ann. § 44-53-110(27)(a) (emphasis added).

Even if we did find that § 445 was divisible and used Hope's state documents to identify which drug type is associated with his conviction under § 445, our inquiry would not yield a different outcome. *See Mathis*, 136 S. Ct. at 2257 (explaining that sentencing court can take a "peek" at record documents, such as indictment, when "state law fails to provide clear answers" on divisibility). In all, Hope's state documents only describe that he

28

was convicted of "marijuana, a controlled substance" as defined by South Carolina Code § 44-53-445 in 2013.[16]

Thus, because South Carolina's definition of "marijuana," as defined in 2013, is broader than the definition of "marijuana," as defined by the 2018 Farm Bill in 21 U.S.C. § 802, there is no categorical match. That is, South Carolina's 2013 "marijuana" definition *also* criminalized "hemp," whereas, at the time of his federal sentence, the federal code no longer criminalized hemp.[17] Accordingly, Hope's prior state convictions do not meet the

---

[16] For example, Hope was first convicted with Distribution of Marijuana in Proximity of a Park, occurring on or about November 12, 2010. *See* J.A. 123. The indictment described that Hope "distribute[d]. . . *marijuana*, a controlled substance." *Id.* (emphasis added). However, the indictment did not specify the THC level. The PSR also noted that "according to the York County Sherriff's Office warrant affidavits, [Hope] distributed 6 grams of *marijuana* to another individual." J.A. 146 (emphasis added). However, the drug amount is irrelevant for our analysis. Second, Hope was convicted of Distribution of Marijuana in Proximity of a School or Park, occurring on or about July 2, 2012. *See* J.A. 149 at ¶ 20. Based on his indictment, Hope "distribut[ed]. . . *marijuana*, a controlled substance, within one-half mile radius of the grounds of said schools or parks." J.A. 138 (emphasis added). Based on the PSR, "according to York County Sheriff's Office warrant affidavits, on July 2, 2012, [Hope] possessed 36.8 grams of *marijuana* and packaged in 37 separate bags." J.A. 147 (emphasis added). Again, the affidavit and indictment did not provide a THC analysis to show that Hope possessed marijuana with greater than 0.3 percent THC. Finally, Hope was convicted of "Possession with Intent to Distribute Marijuana in Proximity of a School," occurring on or about April 30, 2013. *See* J.A. 148 at ¶ 19. Based on the indictment, Hope "posess[ed] with intent to distribute *marijuana*." J.A. 135 (emphasis added).

[17] In determining whether a controlled substance qualifies as marijuana, sister circuits have indicated that "THC tests need not be performed on each plant where sufficiently reliable testimony identifies the plants as marijuana." *See United States v. Madkour*, 930 F.2d 234, 239 (2d Cir. 1991), *cert. denied*, 112 S. Ct. 308 (1991); *see also United States v. Coslet*, 987 F.2d 1493, 1496 (10th Cir. 1993) (same); *United States v. Northrop*, 972 F. Supp. 183, 185 (W.D.N.Y. 1997) (holding that the "presence of THC is not required for a plant to be considered marihuana under 21 U.S.C. § 802(16)"); *United States v. Malbrough*, 922 F.2d 458, 464–65 (8th Cir. 1990) (upholding trial court finding (Continued)

29

definition of "a serious drug offense," and, therefore, should not have triggered the ACCA minimum sentence enhancement.

E.

As noted above, even if we were to adopt plain error review, the outcome would be the same.[18] An error is plain when it is "'clear' or, equivalently, 'obvious'... under current law." *Olano*, 113 S. Ct. at 1777 (1993) (quoting *United States v. Young*, 105 S. Ct. 1038, 1047, n.14 (1985)). We have further clarified that an error is plain "if the settled law of the Supreme Court or this circuit establishes that an error has occurred." *United States v. Maxwell*, 285 F.3d 336, 342 (4th Cir. 2002) (citation omitted). The Supreme Court has also instructed that irrespective of "whether a legal question was settled or unsettled at the time of [the district court's decision], it is enough that an error be 'plain' at the time of

---

of 75 marijuana plants for sentencing purposes, concluding that government count of 100 plants may have been inflated by inclusion of tomato plants), *cert. denied*, 111 S. Ct. 2907 (1991). We have not adopted such a standard and do not need to do so for this case.

[18] The Government points to *United States v. Crocco*, 15 F.4th 20 (1st Cir. 2021), in which petitioner raised, for the first time in a supplemental brief and after oral argument, that his prior Virginia convictions for possession of marijuana with intent to distribute, *see* Va. Code Ann. § 18.2-247(D) (as amended by 2019 Va. Acts ch. 653), should not qualify as a "controlled substance" for purposes of the career offender sentencing guideline under U.S.S.G. § 4B1.2(b) because of the federal legalization of hemp after the 2018 Farm bill. The *Crocco* court held that "even putting waiver aside, Crocco cannot establish plain error due to the myriad unanswered, unbriefed questions described above." Here, however, the instant matter is distinguishable from *Crocco* because Crocco clearly waived his argument as it was raised *after* oral argument, and it was not fully briefed. Second, the panel made its decision on the fact that there were many "unanswered, unbriefed questions" which made Crocco's argument unclear and not obvious. The panel did not substantively rule on the question as a matter of law.

appellate consideration" to constitute plain error. *Henderson v. United States*, 133 S. Ct. 1121, 1127 (2013) (citation and internal grammatical marks omitted).

Here, and as the dissent agrees, there was an error. Still, the dissent departs with us by holding that the error was not plain because there were unsettled questions of law with respect to "which version of 21 U.S.C. § 802 the district court should consult when determining whether a defendant's prior conviction qualifies as an ACCA 'serious drug offense.'" *See* Dissenting Op. at 43. However, and as detailed above, we have settled that when employing the categorical approach to determine whether a state offense qualifies as a predicate offense for ACCA purposes, we conduct a "backward-looking" inquiry that "consults the [state] law that applied at the time of th[ose] conviction[s]." *Cornette*, 932 F.3d at 213 (quoting *McNeill*, 131 S. Ct. at 2222 and then citing *Rivera*, 716 F.3d at 688 (2d Cir. 2013) (clarifying that "[w]hether a prior conviction qualifies as a predicate felony for the ACCA sentencing enhancement is determined by looking to state law existing at the time of that conviction.")). Indeed, in conducting an ACCA categorical analysis, the Supreme Court has looked back to the version of the state statute and penalties when the petitioner was convicted and compared it with the relevant federal provision at the time of the petitioner's federal sentencing. *See United States v. Rodriquez*, 128 S. Ct. 1783, 1786–87 (2008) (looking back to the 1994 statute to determine whether the statute's "maximum term of imprisonment" referenced applicable recidivist enhancements for the purposes of an ACCA enhancement.). Our approach here is the same. Furthermore, district courts are instructed to use the federal sentencing manual that is "in effect on the date that the defendant is sentenced." 18 U.S.C. § 3553(a)(4)(A)(ii). While the dissent is correct to

31

note that we have not engaged in this specific analysis for 21 U.S.C. § 802, the backward-looking method to compare the definition of the state offense at the time of the state conviction with the federal law at the time of federal sentencing for purposes of the ACCA enhancement is settled law.

Thus, we find that the error was plain because, prior to our review, we had already clarified how and when to use the modified categorical approach and how to conduct the backward-looking comparison for the categorical approach. Specifically, we had provided district courts with guidance on how to apply this approach to the South Carolina statute at issue. *See Marshall*, 747 F. App'x at 149. Indeed, the key difference between Hope's case today and Marshall is that Hope was sentenced *after* the 2018 Farm Bill was signed into law. Though our methodology and reasoning are the same as *Marshall*, the change to the federal code yields a different result.

We also find that this error affected Hope's substantial rights because he was sentenced to a mandatory of 180-months, or 15-years, of imprisonment under § 924(e)(1). Without the error, Hope's advisory guidelines would have been 135-168 months of imprisonment with a statutory maximum of 10-years. J.A. 154; PSR ¶ 55. Because the incorrect application of law resulted in an unjustified increased minimum sentence for Hope, our failure to correct the district court's error "would result in a miscarriage of justice or would otherwise seriously affect the fairness, integrity or public reputation of judicial proceedings." *United States v. Whitfield*, 695 F.3d 288, 303 (4th Cir. 2012) (quoting *United States v. Robinson*, 627 F.3d 941, 954 (4th Cir. 2010) (internal quotation marks omitted)); *see also Wiborg v. United States*, 16 S. Ct. 1127, 1137 (1896) ("although this

question was not properly raised, yet if a plain error was committed in a matter so absolutely vital to defendants, we feel ourselves at liberty to correct it").

## IV.

For these reasons, we conclude that Hope's predicate state offenses are *not* a categorical match under the ACCA and, thus, Hope's sentence is

*VACATED AND REMANDED.*

THACKER, J., dissenting:

I agree with the majority that the district court erred when it sentenced Appellant Soterio Lamar Hope ("Appellant") pursuant to the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). However, because in my view, we review for plain error, and the district court's error was not plain, I would affirm the district court.

I.

As the majority correctly points out, "[w]hether a prior conviction qualifies as a predicate offense under [ACCA] is a question of statutory construction" that we generally review de novo. *United States v. Baxter*, 642 F.3d 475, 476 (4th Cir. 2011). But "[w]hen a defendant has not properly preserved [that] issue by presenting it to the district court . . . we review his appellate contention for plain error only." *United States v. Furlow*, 928 F.3d 311, 317 (4th Cir. 2019), *vacated on other grounds*, 140 S. Ct. 2824 (2020) (mem); *United States v. Pendergraph*, 388 F.3d 109, 113 (4th Cir. 2004) ("Because this objection was not raised at sentencing, we review it for plain error.").

When Appellant objected to the presentence investigation report ("PSR") in the district court, he challenged the PSR's use of his South Carolina Code § 44-53-445 convictions as ACCA predicate offenses. However, Appellant did not argue that these prior convictions do not qualify as "serious drug offenses," which is the argument he now makes on appeal. Instead, he argued that he "pled to a duplicitous indictment in state court" that "charged him with multiple offenses in a single count" based on our holding in *United States v. Marshall*, 747 F. App'x 139 (4th Cir. 2018), that § 44-53-445 "is a divisible

34

statute." J.A. 159 (sealed).[1] As Appellant conceded before the district court, his "duplicitous indictment" argument is foreclosed by *Daniels v. United States*, 532 U.S. 374 (2001), and *Custis v. United States*, 511 U.S. 485 (1994), which preclude a defendant from challenging at his federal sentencing a prior conviction used to enhance his federal sentence.

"To preserve an argument on appeal, the defendant must object on the same basis below as he contends is error on appeal." *United States v. Zayyad*, 741 F.3d 452, 459 (4th Cir. 2014). But, here, Appellant never argued -- either in written objections to the PSR or at sentencing -- "that his prior South Carolina convictions were not serious drug offenses as a matter of law under the ACCA." *Ante* at 4. He also never argued "that the South Carolina statute was divisible and that though the Fourth Circuit previously held that it was a categorical match, this was no longer true because Congress decriminalized hemp in 2018." *Id.* at 5. The majority's assertions to the contrary are at odds with the record in this case. For that reason, Appellant is not, as the majority concludes, merely "adding a finer point to his objection raised below." *Id.* at 7. Therefore, the governing standard of review in this appeal is plain error.

Yet, the majority suggests that a defendant may make a new argument in support of a claim he raised in the district court and still be entitled to de novo review of that claim. *Ante* at 6–7. However, unlike the defendant in *United States v. Robinson*, 744 F.3d 293

---

[1] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

(4th Cir. 2014) -- which the majority cites in support of its argument -- Appellant does not merely raise a new argument. Appellant raises *an entirely new claim* in this appeal.

The defendant in *Robinson* challenged in the district court a two-point increase to his criminal history score that resulted from a prior conviction for selling marijuana. 744 F.3d at 297. On appeal, he presented a different argument about why that prior conviction should not have resulted in the two-point increase. *Id.* at 300. Even though it had not addressed that precise argument, the district court in *Robinson* nonetheless had an opportunity to evaluate whether the two-point increase to the defendant's criminal history score was appropriate and made a specific finding that it was. The same was true in *United States v. Green*, 996 F.3d 176 (4th Cir. 2021), which the majority also references and which relied on *Robinson*. The defendant in *Green* objected to his career offender enhancement in the district court by arguing that his prior conviction was not a "crime of violence" because the definition of that term in the Sentencing Guidelines was vague. 996 F.3d at 178–79. On appeal, he argued that the elements of his prior conviction did not match the "crime of violence" definition. *See id.* at 179–84. Therefore, the defendant in *Green* signaled to the district court that it needed to consider whether his prior conviction qualified as a "crime of violence," and the district court did so.

Here, though, the district court would likely be blindsided to learn that Appellant's "duplicitous indictment" argument -- which, again, Appellant conceded at sentencing was "foreclosed on Supreme Court precedent," J.A. 102 -- should have triggered the district court to explicitly evaluate whether Appellant's § 44-53-445 convictions qualified as ACCA serious drug offenses. The majority avers that the United States "admits that the

36

district court specifically responded to [Appellant's] ACCA objection which indicates that the district court understood [his] claim." *Ante* at 6 n.3 (citing Resp. Br. at 15). This is a strained reading of the United States's argument, which is merely an assertion "that [Appellant] was convicted of three [§ 44-53-445] marijuana offenses." Resp. Br. at 15. In any event, the district court only adopted that finding in the PSR because it was unchallenged.

"The entire purpose of an objection is to alert the district court to the actual basis of asserted error." *United States v. Bennett*, 698 F.3d 194, 199 (4th Cir. 2012). But Appellant did not raise an objection that would indicate to the district court that it needed to look more deeply into whether Appellant's § 44-53-445 convictions met ACCA's definition of a "serious drug offense." Because Appellant did not afford the district court a chance to correct the error he now claims on appeal that it made, our review should be for plain error.

II.

Turning to the merits of this case, I conclude, like the majority, that the district court erred by sentencing Appellant to ACCA's 15-year mandatory minimum. However, I reach that conclusion in a slightly different way.

A.

ACCA applies to a defendant who is convicted of unlawfully possessing a firearm in violation of 18 U.S.C. § 922(g) "and has three previous convictions by any court . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another." 18 U.S.C. § 924(e)(1). As relevant in this case, ACCA defines a "serious drug offense" as "an offense under State law, involving manufacturing, distributing, or

37

possessing with intent to manufacture or distribute, a controlled substance (as defined in [21 U.S.C. § 802]), for which a maximum term of imprisonment of ten years or more is prescribed by law." *Id.* § 924(e)(2)(A)(ii).

In order to determine whether a defendant's prior conviction qualifies as an ACCA predicate offense, we use the "categorical approach," which "requires us to analyze only the elements of the offense in question, rather than the specific means by which the defendant committed the crime." *United States v. Roof*, 10 F.4th 314, 398 (4th Cir. 2021) (per curiam) (internal quotation marks omitted). When applying the categorical approach to assess whether a defendant's prior conviction qualifies as an ACCA "serious drug offense," we evaluate whether the elements of the statute serving as the basis for the prior conviction demonstrate that the prior conviction satisfies the criteria of ACCA's definition of a "serious drug offense." *Shular v. United States*, 140 S. Ct. 779, 787 (2020).

If the statute the defendant was convicted of violating has a "divisible" structure -- *i.e.*, it "list[s] elements in the alternative, and thereby defines multiple crimes" -- we apply the "modified categorical approach" instead. *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016). "Under that approach, [we] look[] to a limited class of documents (for example, the indictment, jury instructions, or plea agreement of colloquy) to determine what crime, with what elements, a defendant was convicted of." *Id.* (first citing *Shepard v. United States*, 544 U.S. 13, 26 (2005); and then citing *Taylor v. United States*, 495 U.S. 575, 602 (1990)). Once we have ascertained the elements of that offense, we can then apply the categorical approach as we would for an indivisible statute.

The majority, focusing principally on the statutory text, holds that § 44-53-445 is not divisible by drug type. *Ante* at 19–24. But significantly, although we "start with the text . . . the focal point of the analysis is what the jury must find (or a defendant must admit) to convict." *United States v. Al-Muwwakkil*, 983 F.3d 748, 755 (4th Cir. 2020) (internal quotation marks omitted). "[O]ffenses are divisible when they consist of alternative *elements* through which the offense may be proved." *United States v. Royal*, 731 F.3d 333, 341 (4th Cir. 2013) (emphasis in original) (citing *Descamps v. United States*, 570 U.S. 254, 260 (2013)). The elements of an offense, in contrast to various factual means of violating a statute, "are factual circumstances of the offense the jury must find 'unanimously and beyond a reasonable doubt.'" *Omargharib v. Holder*, 775 F.3d 192, 198 (4th Cir. 2014).

Therefore, in addition to the statutory text, we consult "external sources" like jury instructions and charging documents to determine whether the statute includes multiple crimes or a single crime. *Al-Muwwakkil*, 983 F.3d at 755–56. To reach our conclusion that § 44-53-445 is divisible as to offense conduct, we "consider[ed] how South Carolina prosecutors charge the offenses, the elements on which South Carolina juries are instructed, and the manner in which South Carolina courts treat convictions under [§ 44-53-445]." *United States v. Marshall*, 747 F. App'x 139, 150 (4th Cir. 2018). Those same sources also indicate that the specific controlled substance involved in the violation of § 44-53-445 is in fact an element of the offense, not a means of commission.

For instance, in *State v. Watts*, 467 S.E.2d 272, 278 (S.C. Ct. App. 1996), the South Carolina Court of Appeals implied that the trial court correctly instructed the jury when it included the particular drug -- in that case, crack cocaine -- among "[t]he essential elements

39

of the offense . . . the State was required to prove." Indeed, South Carolina's pattern jury instructions direct the trial court to "[i]nsert the applicable controlled substance" when giving the instruction for a § 44-53-445 charge. Ralph King Anderson, Jr., Anderson's South Carolina Requests to Charge – Criminal § 4-15 n.3 (2d ed. 2012). And the indictment in *State v. Gill*, 584 S.E.2d 432, 435 (S.C. Ct. App. 2003), like the indictments for Appellant's § 44-53-445 convictions, charged the defendant not with distributing an unnamed controlled substance but with distributing a specific drug -- in *Gill*, crack cocaine. This is consistent with the way South Carolina state courts have described § 44-53-445 offenses. *Brown v. State*, 540 S.E.2d 846, 849 (S.C. 2001) (calling crime "distribution of crack cocaine" and listing "the substance upon analysis was, in fact, crack cocaine" as element to be proven by State), *overruled on other grounds by State v. Gentry*, 610 S.E.2d 494 (S.C. 2005); *State v. Toliver*, 403 S.E.2d 676, 676 (S.C. Ct. App. 1991) (describing offense as "possession with intent to distribute crack cocaine within close proximity of a school").

In short, § 44-53-445 is divisible as to both offense conduct and drug type. Therefore, we utilize the modified categorical approach to determine whether Appellant's convictions fit within ACCA's definition of a "serious drug offense."

B.

Applying the modified categorical approach in this case, we must first consult the universe of permissible documents from the state-court proceedings resulting in Appellant's prior convictions in order to ascertain the precise offense set forth in § 44-53-445 of which he was convicted. *Mathis*, 136 S. Ct. at 2249 (first citing *Shepard*, 544 U.S.

at 26; and then citing *Taylor*, 495 U.S. at 602). The indictments and sentence sheets[2] indicate that Appellant was convicted of distribution of marijuana in proximity of a school or park for his November 12, 2010 and July 2, 2012 conduct and with possession with intent to distribute marijuana in proximity of a school for his April 30, 2013 conduct.

Next, we must decide whether each of those offenses "involve[s] the conduct specified in" ACCA's definition of a "serious drug offense." *Shular*, 140 S. Ct. at 782. A prior conviction qualifies as a "serious drug offense" if it is "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in [21 U.S.C. § 802]), for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii). Appellant's § 44-53-445 convictions are for distribution and possession with intent to distribute, activity that falls within the scope of the "serious drug offense" definition. And those convictions carried with them a maximum possible penalty of ten years in prison. S.C. Code § 44-53-445(D)(1).

As to the "controlled substance" portion of the "serious drug offense" definition, the majority correctly determines that we must compare the South Carolina drug schedules as of the date of Appellant's § 44-53-445 convictions and the federal drug schedules as of the date of Appellant's federal sentencing. *Ante* at 25–27. We consult the state drug schedules at the time of the defendant's prior state conviction because "ACCA is concerned with

---

[2] We have previously classified South Carolina sentence sheets as *Shepard* documents that can be used in application of the modified categorical approach. *E.g.*, *United States v. Williams*, 997 F.3d 519, 523 (4th Cir. 2021).

41

convictions that have already occurred." *McNeill v. United States*, 563 U.S. 816, 820 (2011). To that end, "[w]hether the prior conviction was [a "serious drug offense"] can only be answered by reference to the law under which the defendant was convicted." *Id.* And ACCA is a federal sentencing statute "intended to affect federal sentencing at the time of a defendant's federal conviction, not at the time of his prior predicate state convictions," so "the predicate status of a state conviction is meant to be determined with reference to the law existing at the time of the defendant's § 922(g) federal sentencing." *United States v. Faust*, 869 F.3d 11, 12 (1st Cir. 2017) (Lynch, J., dissenting).

The majority also correctly determines that the definition of marijuana in the South Carolina drug schedules as of the date of Appellant's § 44-53-445 convictions is broader than the federal definition of marijuana as of the date of Appellant's federal sentencing because the South Carolina definition includes hemp, while the federal definition expressly excludes hemp. *Id.* at 23–25. This discrepancy means that the South Carolina statute is not a categorical match for the federal statute. As a result, the district court erred in determining that Appellant's three prior convictions under § 44-53-445 were ACCA "serious drug offenses."

## III.

However, the district court's error was not plain. "There is plain error only when (1) an error was made; (2) the error is plain; (3) the error affects substantial rights; and (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Fall*, 955 F.3d 363, 373 (4th Cir. 2020) (internal quotation marks omitted). "An error is plain if it is 'clear or obvious, rather than subject to reasonable

42

dispute.'" *United States v. Johnson*, 945 F.3d 174, 179 (4th Cir. 2019) (quoting *Puckett v. United States*, 556 U.S. 129, 135 (2009)). Before today, we had not decided which version of 21 U.S.C. § 802 the district court should consult when determining whether a defendant's prior conviction qualifies as an ACCA "serious drug offense." The majority holds -- and I agree -- that we look to the version of 21 U.S.C. § 802 in effect at the time of the defendant's federal sentencing. Even now, none of our sister circuits has decided this question. Moreover, their cases addressing which versions of the federal drug schedules to apply to the federal Sentencing Guidelines and to removability in the immigration context reach opposing conclusions.[3] And we had not yet decided at the time of Appellant's federal sentencing whether § 44-53-445 is divisible by drug substance.

The law on these key issues in this case was thus far from settled at the time of Appellant's federal sentencing. Under these circumstances, it cannot be said that the district court plainly erred by adopting the PSR's finding that Appellant's § 44-53-445

---

[3] Three of our sister circuits -- the First, in *United States v. Abdulaziz*, 998 F.3d 519, 531 (1st Cir. 2021); the Sixth, in *United States v. Williams*, 850 F. App'x 393, 398 (6th Cir. 2021); and the Ninth, in *United States v. Bautista*, 989 F.3d 698, 703 (9th Cir. 2021) -- have held that for purposes of determining whether a prior conviction constitutes a "controlled substance offense" pursuant to U.S.S.G. §§ 4B1.2 and 2K1.2 or a "drug trafficking offense" pursuant to U.S.S.G. § 2L1.2, the relevant federal controlled substance schedules are the ones applicable at the time of federal sentencing. By contrast, four of our sister circuits -- the Second, in *Doe v. Sessions*, 886 F.3d 203, 208 (2d Cir. 2018); the Third, in *Martinez v. Attorney General*, 906 F.3d 281, 287 (3d Cir. 2018); the Ninth, in *Medina-Rodriguez v. Barr*, 979 F.3d 738, 749 (9th Cir. 2020); and the Eleventh, in *Gordon v. United States Attorney General*, 962 F.3d 1344, 1351 n.4 (11th Cir. 2020) -- have held that the federal controlled substance schedules in effect at the time of the non-citizen's prior conviction constitutes an "aggravated felony" for purposes of removability pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii).

convictions were ACCA "serious drug offenses" and sentencing Appellant to ACCA's 15-year mandatory minimum sentence. Accordingly, I respectfully dissent.